# Bassett *v.* Pennsylvania Railroad Company, Appellant.

*Railroads—Right of way—Eminent domain—Adverse possession—Question for jury.*

In an action of trespass where the question involved is title to a strip of land upon which a railroad company has laid a fourth track, if the plaintiff shows that he and his predecessors have had continuous, adverse possession of the strip for over forty years, the burden is upon the railroad company to show that the land was embraced within the limits of the right of way acquired by condemnation proceedings. If the evidence as to the location of the right of way, and as to whether the land in controversy is included in it is conflicting, the case is for the jury.

In the above case an agreement in writing by which one of plaintiff's predecessors in title was given a right of passage over the land is competent evidence.

*Evidence—Plan made by engineer—Witness.*

In a case involving a question of title to a strip of land claimed by a

railroad company, as part of its right of way, a plan made by an engineer, who is a witness, from his notes of survey, is competent evidence.

Argued Oct. 30, 1901.   Appeal, No. 66, Oct. T., 1901, by the Pittsburg, Fort Wayne & Chicago Railway, from judgment of C. P. No. 2, Allegheny Co., July T., 1899, No. 77, on verdict for plaintiff in case of James Guy Bassett v. Pennsylvania Company, Lessee of Pittsburg, Fort Wayne & Chicago Railway, Appellant, and the Pittsburg, Fort Wayne & Chicago Railway Company.  Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Trespass to recover damages for laying tracks on land alleged to be the property of plaintiff.   Before SHAFER, J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,500.   Defendant appealed.

*Errors assigned* were (1) admission in evidence of agreement between Mueller and Venn, referred to in the opinion of the Supreme Court; (2) admission in evidence of engineer's plan ; (3, 4) portions of charge.

*William S. Dalzell*, with him *William Scott* and *George B. Gordon*, for appellant.—Where a railroad company enters upon and occupies land under color of title, such possession is regarded as coextensive with the entire tract described in the instrument under which such possession is claimed : Omaha, etc., Ry. Co. v. Rickards, 38 Neb. 847 ; 57 N. W. Repr. 739 ; Mobile, etc., R. R. Co. v. Cogsbill, 85 Ala. 456 ; 5 So. Repr. 188 ; Hargis v. Kansas City, etc., Ry. Co., 100 Mo. 210 ; 13 S. W. Repr. 680 ; Pillsbury v. Brown, 82 Me. 450 ; 19 Atl. Repr. 858 ; Gibbs v. Larrabee, 37 Me. 506 ; Zahn v. Pittsburg, etc., Ry. Co., 184 Pa. 66.

*James Fitzsimmons*, for appellee, cited : Goddard v. Philadelphia & Baltimore Central R. R. Co. et al., 2 Lancaster Law Rev. 265, affirmed in 13 Atl. Rep. 214.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1902:

This is an action to recover damages for an alleged trespass.

The plaintiff alleges that the defendant, in April, 1899, unlawfully entered upon a strip of land in Glenfield borough, Allegheny county, eighteen feet in width and about 490 feet in length; of which he claims a fee simple title to 336 feet and an easement or right of way over the residue. He also claims that his adjacent land was injured by the defendant's operations on the strip of land upon which the entry was made. This is conceded to be true, and there is no defense to that part of the plaintiff's claim. The defense set up by the defendant company to the alleged trespass upon the strip of land in question, is that it is a part of the right of way of its railroad, obtained by condemnation proceedings in the court of common pleas of Allegheny county in 1850. It is claimed that while an actual entry by the construction of tracks was not made upon this land until 1899, yet, by authority of the condemnation proceedings, an entry could have been made at any time since the date of the judgment in these proceedings. The defendant, therefore, denies that it committed a trespass when it entered upon this land in 1899 to lay its additional track.

The plaintiff is the owner of a tract of land fronting 336 feet on the north side of the defendant company's right of way. He also claims a passage or private way eighteen feet in width and about 154 feet in length, along and adjacent to the defendant's right of way over the land adjoining him on the west. This strip, and one of the same width and 336 feet in length, lying between his own land and the defendant company's right of way and adjacent thereto, is the land in dispute. It is claimed by the plaintiff that he and his predecessors in title have used this strip of land as a roadway to and from their premises continuously for over forty years.

The Ohio & Pennsylvania Railroad Company, the defendant's predecessor, was incorporated in Pennsylvania under the act of April 11, 1848. By its charter it was authorized to enter upon and appropriate as much land as it deemed necessary for its railroad, and was required to deposit with the clerk of the court of the county wherein the land lies, a description of the land taken for railroad purposes. By proceedings at No. 155, June term, 1850, of the court of common pleas of Allegheny county, the corporation chartered under this act, condemned a strip of land eighty feet in width and extending through the lands of the

heirs of John M. Hood, the plaintiff's predecessor in title. The land thus appropriated is described in the condemnation proceedings by courses and distances, and in width is fifty feet north and thirty feet south of the center line. The description, however, contains no reference to any marks or monuments on the ground except to name, as the place of beginning the intersection of the center line of the railroad with the eastern boundary of the Hood land. At first but one track was laid on this right of way. Subsequently another was laid, and, in 1896, a third track was laid. None of these, however, were on the disputed land. In 1899, in the construction of a fourth track, the defendant company occupied the strip of land claimed by the plaintiff. This action was then brought to recover for the trespass.

On the trial of the cause the learned judge submitted to the jury, as the controlling question in the case, whether the strip of land in dispute was a part of the defendant company's right of way as set forth in the description filed in the condemnation proceedings, and instructed the jury that if it was, the plaintiff could not recover, but, if it was not and was the plaintiff's land, he could recover for the damages sustained. This was a correct statement of the issue, and its determination involved the actual location on the ground of the defendant's right of way acquired by the condemnation proceedings. This was a strip of land eighty feet in width, extending along and adjacent to the southern line of the plaintiff's property. The extent of the appropriation was, therefore, defined by these proceedings, and its original location upon the ground was, under the evidence in the case, for the determination of the jury.

The plaintiff's deed showed that the southern boundary of his lot was the northern line of the Pittsburg, Fort Wayne & Chicago Railway, the defendant's predecessor. The southern line of the adjoining property, over which the plaintiff claims a private way, is, also, the northern line of the railway. The plaintiff introduced evidence to prove that he and his predecessors in title had occupied and used as their property the land in dispute for thirty-five or forty years. According to this testimony, a stone wall was built on the north side of the disputed strip of ground by the owners of the adjacent land

about the year 1870, and that for some years prior to that date, a fence stood on the south or railroad side of the land, erected by the defendant company. The strip between the wall and fence is the land in dispute, and the plaintiff's testimony tended to show that the plaintiff and his predecessors in title had used it as a way of ingress to and egress from his land for about thirty years. It appears that the defendant never occupied this land until 1899, when it constructed its fourth track upon it. The plaintiff called in rebuttal J. J. Henderson, a surveyor, who tried to locate upon the ground the defendant's right of way, according to the description in the appropriation proceedings. From his survey he made a plan of the premises, the admission of which in evidence is the subject of the second assignment of error. He testified that he could not locate the right of way on the ground from the two appropriation plats filed with the description. In making his survey he commenced at the point of intersection of the center line with the property lines named in the description which he claimed to be well defined on the ground, and followed the courses and distances on the appropriation plats. He says that according to his survey the present location of the tracks is from sixty-five to two hundred feet north of the original appropriation. He further testified that the center line between the tracks did not correspond to data on the appropriation plats. Henderson says that in making his survey he used the center line given him by the plaintiff. The defendant concedes that the plaintiff gave the surveyor the correct location of the center line, but alleges that the survey was inaccurate because the surveyor did not know the correct location of the property lines which it intersected.

The defendant put in evidence the original condemnation proceedings. It then introduced testimony tending to show that the stone wall was built on the southern line of the Mueller and Bassett properties, which is the northern line of the defendant's right of way, and that it was located by the defendant's engineers at the request of the property owners. Some of the witnesses testified that there was no road between the stone wall and the company's right of way. The defendant's assistant general superintendent testified that the center line of a railroad's right of way is the adopted final location, but

that it is not necessarily the line on which the tracks are laid. Engineer Ross, called as a witness by the defendant, testified that he attempted to locate the original center line by a survey in 1892. He found the stone wall to be about forty-four and five-tenths feet north of his location of the center line. He states that he determined the original location of the center line from the assumption that the center of two stone bridges was the center line of the right of way, and from the condition of four longitudinal mudsills, at one time used under the tracks and which were found and dug up, in the line of the road. He further testified that the tracks could be constructed on one side of the appropriation and that if the tracks of the company and the mudsills and bridges there had been so constructed, he would be in error as to the exact location of the center line of the road. It further appeared from his testimony that in making his survey he did not attempt to use the bearings and distances indicated on the notes of the plan of appropriation, and that he found no landmarks that would indicate the location of the center line. Mr. Faulkner, a civil engineer, was also called by the defendant to prove a map made by him showing the railroad tracks and the condition of things in and about the right of way in 1899, when the additional track was laid. He made the map, however, practically from the Ross survey, and hence it shows the same results.

It is evident from this testimony that the case was for the jury. The plaintiff established a prima facie title to the land in dispute. It was then incumbent upon the defendant to show that this land was within the limit of its appropriation made in 1850. From the above recital of the testimony of the engineers called by the parties, it appears that the accuracy of their conclusions as to the location of the defendant's right of way, as originally established, depends upon the correctness of the data used by them in making their surveys. Each has testified to what data he used for this purpose, and it was for the jury to determine the credibility of the witnesses and the accuracy of the results of their work. This, and the other testimony, was sufficient to authorize the submission of the case on the vital and controlling question involved in it.

The first assignment alleges error by the court in admitting in evidence the agreement between Mueller and Venn, the

plaintiff's predecessor in title, which granted to Venn a passage over Mueller's land along the defendant's right of way. This was clearly competent as tending to establish the plaintiff's title to this part of the land in dispute and his right to recover for the trespass upon it, provided the land was not a part of the defendant's right of way. In that event, as distinctly said in the judge's charge, the agreement would not aid the plaintiff in establishing his title to the easement. But, without this and other evidence showing title to this strip of land, the plaintiff could not, as against the defendant, recover even if the disputed land was not within the limits of the company's appropriation.

The second assignment relates to the action of the court in admitting in evidence exhibit No. 7, which was a plan made from his notes of survey by the witness Henderson, showing the appropriation by the company and the present location of the tracks. The objection that it was incompetent because "based upon vague, indefinite and insufficient data," is answered by saying that the accuracy of the data and of the plans, like the credibility of the witness who made it, was for the jury. It was the result of the engineeer's work, showing what he had testified to on the stand, and was, we think, clearly competent.

The third and fourth assignments allege error in portions of the charge therein recited. We have referred to the testimony produced at the trial and have held that it was sufficient to go to the jury on the issues raised in the case. The parts of the charge therein claimed to be objectionable direct the attention of the jury to the issues and to the testimony produced in support of them. If, as the defendant argues, apparently in support of these assignments, the court below should have withdrawn from the consideration of the jury the question of title to the land in dispute, then its counsel should have presented to the court a prayer to that effect. These assignments do not raise that question. We think they are without merit.

This case was tried as if the land in question had been taken under the right of eminent domain. In many respects it is similar to Phila. & Reading R. R. Co. v. Obert, 109 Pa. 193. That was a proceeding by the plaintiff to assess damages for land taken for an additional track, the defendant company and another party claiming title to the strip. The company claimed

under a deed which conveyed to it all the land upon which the "railroad is located and about to be constructed." The plaintiff also claimed through the same party a tract of land lying east of the railroad, the western line of which was described as "along the eastern bank of the railroad." There were no monuments on the ground marking the company's original location, and no draft was produced at the trial showing the original appropriation. The question in the case is stated by CLARK, J., delivering the opinion, as follows: "What land, then, did the company at the time and in this particular place appropriate and actually embrace in the location? This was the substantial inquiry in the cause and was one for the consideration of the jury, to be determined under all the evidence in the case." As to the proof required by the parties and upon whom the burden rests, it is said: "The claimant of compensation must aver and prove his title, but proof of possession by actual occupancy under a claim of title, for thirty or forty years as in this case, in a proceeding to assess damages, would certainly be prima facie evidence of title. Assuming that a railroad is in a qualified sense a public highway, held under the commonwealth's right of eminent domain, under the charter, and that title to the lands covered by the location as against the company could not be acquired by adverse possession, the exhibition of such a prima facie right devolved upon the company, the burden of proof that the lands in question were embraced in that location; until that fact did appear the principle of law invoked could have no application to the case."

The case was properly tried in the court below, and the judgment is affirmed.