# Philadelphia & Reading Railroad Company *versus* Obert.

1. In a proceeding by A. against a railroad company, to assess damages for land taken for an additional track, the railroad company and R., both claimed title to the strip. The company claimed under a deed from B. which conveyed to it, in 1835, all the land upon which the said "railroad is located and about being constructed." A. owned the land lying east of the railroad, and claimed from B. also, through intermediate conveyances, one of which described the western line of the land conveyed as "along the eastern bank of the railroad," giving courses and distances; while the others bounded the land conveyed "on the west and northward by the . . . . . railroad and branch . . . . ." No draft of the original location of the railroad was in evidence, nor were there any monuments on the ground:

    *Held,* that the company took, by B.'s deed, a fee in its original location; that the eastern boundary thereof was the western boundary of the land, and the vital question, therefore, was to fix the original location of the railroad.

2. By its charter the company was empowered "to enter upon and occupy all lands on which the said railroad may be located . . . . . provided that the said railroad shall not . . . . . exceed four rods in width."

    *Held,* that while the company had a right to appropriate four rods in width under this provision, yet, in this collateral proceeding, no presumption was raised thereby, in absence of proof that the company did actually include the four full rods in width in its original location. Prather *v.* W. U. Tel. Co., 14 Am. & Eng. R. R. Cas., 1, distinguished.

3. The deed from B. to the company provided that B. should "make and keep a fence on his adjoining land, along said railroad, at his own expense." A. offered evidence to show that such a fence was soon afterwards made, in pursuance of this provision of the deed, and was maintained upon the same line continuously from that time until the taking of the land by the company for their additional track, a period of more than forty years, and that said fence included the strip in dispute, in A.'s land.

13 OUTERBRIDGE—13

*Held*, that the evidence offered was sufficient to submit to the jury; and if they found that such a fence was erected and maintained for forty years, with the acquiescence of the company, this was ground for a presumption that said fence marked the line of the original conveyance to the company, as then established by the parties:

*Held*, also, that while the question of title was preliminary to an inquiry into the amount of damages sustained by A., and it was necessary for him to aver and prove title; yet, proof of possession by him for forty years, under claim of title, was *prima facie* evidence thereof, and put the burden of proof on the company to show that the land in question was embraced in its original location.

4. The courses and distances given in a deed, will yield to the calls, where the location of the latter can be clearly established.

March 3d, 1885. Before Mercur, C. J., Gordon, Trunkey, Sterrett and Clark, JJ. Paxson and Green JJ., absent.

Error to the Court of Common Pleas of *Berks county:* Of January Term 1885, No. 115.

This was a proceeding under the general railroad law by Francis J. Obert, plaintiff, against the Philadelphia & Reading Railroad Company, defendant, to obtain an assessment of damages to the plaintiff for a strip of land in the city of Reading, taken by the defendant for an additional track.

The viewers filed a report estimating Obert's damages at $7,266, upon which report judgment was entered. By agreement of counsel the case was then put on the trial list without further pleadings, Obert to take the affirmative of the issue, which was whether the title to the strip was in the plaintiff or the defendant, the same being claimed by each.

On the trial, before Sassaman, J., both parties claimed, through one Henry Hahs, who owned the land in the year 1835, at the time of the original location of the defendant's road. On August 11th, 1835, Hahs made a deed to the defendants for "all that certain piece or parcel of land, situate in the borough of Reading, comprehending and being the land on which the said Philadelphia and Reading Railroad is located and about being constructed on and through the lot of land of the said Henry Hahs."

The land east of the railroad was, by deed of July 12th, 1839, conveyed by Hahs to Muhlenberg, the deed describing the western line of the land conveyed as " along the eastern bank of the railroad, south 14¼ degrees west, 15¼ perches." The description in this deed began "at a post in a line of South street;" but the location of this point was a matter of dispute between the plaintiff and the defendants. By deed of May 31st, 1854, Muhlenberg conveyed said land to Tibbets, who in turn made a deed to the plaintiff. The last two deeds described the land as follows: " A lot or piece of ground in

the city of Reading, bounded and contained in the following limits, viz.: On the east by the south extension of Ninth street, on the south by South street, and on the west and northward by the Philadelphia & Reading Railroad, and the branch railroad leading to the Cotton Mill."

The defendants claimed that the original location of their road included the strip now taken for their additional track, and was therefore conveyed to them by Hahs' deed in 1835; while plaintiff contended that said strip was not included in the original location of the railroad, and therefore not conveyed to defendants by Hahs' deed.

No draft of the original location of the defendant's road was in evidence. By their charter they were authorized " to enter in and upon and occupy all lands on which the said railroad . . . . . may be located . . . . . provided that the said railroad shall not, except in deep cuts and fillings or in points selected for depots . . . . . exceed four rods in width."  The defendants claimed under this clause that the deed from Hahs to them must be construed as passing to them the statutory width of 66 feet, which would include the strip in dispute. By the deed from Hahs to the defendant company it was provided that Hahs should " make and keep a fence on his residue of adjoining land along said railroad at his own costs and charges." The plaintiff introduced evidence to show Hahs had erected a fence in pursuance of this clause along the boundary of his land and the railroad, which was there built on an embankment, said fence being a few feet from the foot of the embankment; that the defendants gradually filled in the space between their bank and the fence to a level with the road bed; that plaintiff at the same time filled in on his side of the fence to the same level, gradually raising the fence above its original line, as required by the new grade; that this fence still existed in 1880 when the defendants removed it and built their additional track on plaintiff's side of it. Plaintiff contended that this fence having been built with the acquiescence of both parties at or about the time of the original location of defendants' road, and having remained on the same line for more than forty years, showed that the original location of the road excluded the strip now claimed by the defendants.

Plaintiff had extensive boiler shops on his land, and used the space between his shops and the railroad, including that taken for the additional track for the purposes of his business; he claimed, *inter alia*, by way of damages, that before the additional track was built, the space taken for the same was used by him in the construction of long boilers which extended over this space, and that the want of said space caused him

serious inconvenience and damage in the manufacture of such boilers.

Plaintiff offered to ask a witness : " What is the difference between a fair market value of your boiler works immediately before the appropriation of the land in question by the railroad company and immediately thereafter as affected by the said appropriation ? "

Counsel for defendant objects, because, under the evidence offered by the plaintiff, the plaintiff has failed to establish a title to the property which was occupied by the railroad, and under the evidence in this case, and the statutes of the Commonwealth, the title to said property for railroad purposes is shown to be in the Philadelphia & Reading Railroad Company.

" *The Court.* It may be that eventually in this case the legal doctrines outlined by the exceptions to this offer must be maintained as the law, but for the purposes of this trial the objections are overruled, the offer admitted, and a bill sealed for defendant." (First assignment of error.)

Plaintiff submitted, *inter alia*, the following points :

2. " If the jury from the covenant in the said deed on the part of Hahs ' to make and keep up a fence on his residue adjoining land along said railroad, at his own cost and charges,' and from the testimony in the case tending to show that a fence was put up along the said railroad shortly after the completion thereof and while Hahs was still the owner of the residue of the land, and from the other testimony in the case should find that the railroad company and Hahs by an arrangement or agreement between themselves fixed the fence as the limit of the land which the railroad company should take under the said deed, the railroad company was bound by such arrangement or agreement, and all the land beyond the fence remained to Hahs, his heirs and assigns, and if the jury should believe that the fence which at the time of the appropriation of the tract of land in question existed between the railroad and Obert's boiler works stood upon the line so fixed, then under the said conveyance from Hahs the railroad company could appropriate no land beyond the fence without rendering itself liable to compensate the owner therefor."

*Ans.* " If the jury should find from the evidence in the cause that there was such an arrangement, then the point is correct as matter of law." (Sixth assignment of error.)

3. " When the owner of land conveys part of it to another, and there is a covenant in the deed between the parties thereto that the grantor shall make and keep a fence on his residue adjoining land along the line of the property granted at his own cost and charges, and pursuant to the said covenant a fence

is erected and maintained by the grantor and his assigns for more than forty years, a presumption arises that the said fence marks the division line between the two owners, and the fact of the grantee being a corporation does not alter the case, for corporations in their contracts are placed upon the same footing with natural persons, open to the same implications and receiving the benefit of the same presumptions."

*Ans.* "As abstract matter of law, the principle cited as law is correct. This would be modified in case of a transfer by deed for a public use, such as a public highway, when the right to the land would be limited only by the use contemplated." (Seventh assignment of error.)

4. "There is no evidence in the case of a purchase by the railroad company of the land whereon their branch road running from the main track through Obert's property to the Cotton Mill is constructed. Nor does it appear that the said company had by law vested in it the power to appropriate property for the construction of such a branch road prior to the year 1864, and the rights which would by lapse of time accrue to the company to maintain the said branch road would not extend beyond the use of the said road and the ground whereon it is located, in such manner and to such extent as it had been used during the period of time the lapse of which gives them the right to maintain such branch road."

*Ans.* "Affirmed, but there is no controversy here about it." (Fourteenth assignment of error.)

5. "In the absence of a purchase and in the absence of any authority vested in the company by law to take the property of private individuals for the purpose of constructing a branch road, the company cannot claim any rights upon the land lying adjacent to the said branch road excepting such as they have acquired by long user, and only to the extent of such user."

*Ans.* "Upon the facts contemplated herein, the assertion of law is correct." (Fifteenth assignment of error.)

6. "If the jury believe that the railroad company originally took and received thirty-three feet of ground to the east of their railroad, measuring from the centre of their main track, neither under the deed of Hahs nor under the right of eminent domain could they in 1880 appropriate additional ground to the east without compensating the owner therefor."

*Ans.* "The law promulgated in the point is correct, if the facts support it." (Ninth assignment of error.)

The defendants asked the court to charge:

1. "That by the deed of Hahs to the defendants, the defendants acquired title to all the land which the statute permitted them to take, viz., *four rods and such additional ground*

as is allowed to be taken where filling is required, and that under the evidence in this case, that the road on its western side encroached on Neversink street, and was on an embankment of eight feet on the eastern side, if the jury believe that the distance from the old line of Neversink street to the fence put up in 1880 along the Obert property does not exceed sixty-six feet, the plaintiff cannot recover."

*Ans.* "This point would be correct, if the facts assumed are true. It depends upon where the actual location and construction of the railroad was contemplated at the time of making the deed. The deed sounds in fee, the description is uncertain, but seems to have been intended for the purchase of the right of way. Then its eastern line, 33 feet from the centre line of the railroad, as then located, would make the line." (Tenth assignment of error.)

3. "That as the testimony shows that a right of way 33 feet from the centre of the Cotton Mill branch as it existed prior to Obert's purchase, places the fence opposite the boiler works within such right of way, the plaintiff cannot recover."

*Ans.* "The testimony, taken altogether, does not warrant the affirmation of this point." (Sixteenth assignment of error.)

4. "That as the plaintiff's deed calls for the Philadelphia & Reading Railroad and the branch to the Cotton Mill, as the western and northern boundaries of the property, he has no right to locate his land so as to include any of the railroad's right of way, and in the absence of other proof, the law fixes that right of way as at least 66 feet, and therefore the plaintiff cannot recover."

*Ans.* "If the facts should be as the point contemplates, this would be the law." (Eleventh assignment of error.)

7. "That in the absence of other monuments controlling the location, the plaintiff's land is to be located from the centre of Ninth and Cotton streets, and not from the corner of the building line of Ninth and Cotton streets."

*Ans.* "Where a road is part of a call of a survey the land *ad medium filum* belongs that far to the adjoining owners, but that does not control the distances back from the road or street." (Third assignment of error.)

9. "That in the absence of proof that the plaintiff was accustomed to construct long boilers by running them out over this strip prior to April, 1880, the theory of damages sustained by reason of shortening the distance between the works and fence is too speculative to be given much weight."

*Ans.* "So far I cannot go, but the jury have no right in law to award speculative, imaginative, or consequential damages, but they have a right to award damages for all injuries

actual and the immediate result of the injury." (Eighteenth assignment of error.)

The court in its general charge instructed the jury, *inter alia*, as follows:

"If the railroad company bought this land, the one tract being the emphatical complement of the other, that would make a well-defined line, and if the line was well defined at the time of the purchase by Muhlenberg from Hahs, then Mullenberg would get up to the railroad, if the railroad got that far. But it is said that this was not a well-defined line when the railroad company bought it, and that there was insufficiency in description in the deed to the railroad. It is a rule of law that whatever is taken by a first deed from any grantor, the same grantor cannot again sell to anybody else. The rule of law is that the first deed and last will prevails. This is a well-established legal precept. What a man has sold once by a deed properly recorded, he can never sell again to any one else. If this line was not well marked between the railroad and Muhlenberg, or between the railroad and Hahs, then there was insufficiency of description, and if that was not changed up to the time Muhlenberg took title, the insufficiency remains." (Second assignment of error.)

" . . . . . So far as the evidence in this case goes, there were no monuments upon this ground. There were no stones fixed, or trees planted, or stakes of a durable character put there by the railroad. There was nothing there but a fence. If the fence was put there by the railroad company or by Hahs, who covenanted to build a fence, and the company stood by and permitted the line thereby to be fixed, it will be for the jury to say whether or not the railroad company is estopped after having located and properly defined the route.

"The trouble in this case is that there is no draft in existence, made by the railroad, defining the land which they got from Hahs, or defining the road which was being constructed and built there. The language of the deed is, ' on which land the said Philadelphia & Reading Railroad is located, and about being constructed on and through the lot of the said Henry Hahs.' If the railroad company had at that time made a map of their road, and produced it here as the old draft of that time, showing and defining the railroad as of that time, we would regard that draft as prevailing over everything else. That not having been done, the jury are left to grope in the dark, and the court cannot be of any assistance further than to say to you what we have already said. The question which arises is, whether or not, after having had Hahs to make such a conveyance as he did, the railroad company would not be bound, they having stood by when improvements were made

without making any assertion of title to the contrary. (Eighth assignment of error.)

"  . . . . . There is another matter to which I wish to call your attention, and that is this : a great deal has been said about the right of a railroad under this Act of Assembly to which reference was made, that they would be entitled to 66 feet for their roadway. That is so under this Act of Assembly. They are forbidden to go to any greater width than that, except where there is an excavation or a fill. It is admitted by an engineer that where there is a deep cut, for every foot on the height of the cut it requires one and a half feet laterally. It is the same where an embankment must be made ; and if the embankment were twenty feet high there would be a lateral extension of 15 feet on each side, because for every foot in ascent one and a half feet is required laterally to support it, otherwise the bank would roll down and would not be safe. Railroads must be built safe, and the act gives the railroad company the right to so extend on the ground where there are cuts or fills. This doctrine, however, does not apply in this case for the reason that under the evidence, which is uncontradicted, whenever the company filled up on the side toward the old fence, after it reached it, then Obert filled up to the level of the track, thereby making the ground level at that point. That question, therefore, needs no consideration from you."

Verdict for plaintiff for $9,900, and judgment thereon ; whereupon the defendants took this writ, assigning for error the admission of evidence, the answer to points and the parts of the general charge, as above set out ; also the refusal of the court to withdraw the case from the jury, under the evidence.

*George F. Baer*, for plaintiffs in error.—The Hahs' deed granted all the land which the statute permitted the defendants to take, viz., four rods and such additional ground as is allowed to be taken where filling is required. This proposition is well sustained by authorities : Prather *v.* Western Union Tel. Co. 14 Am. & Eng. R. R. Cases, 1, and cases there cited. Although the court affirmed this proposition in a general way, yet instead of applying it to the determination of the location of the land, it twisted it up so as to apply it to the character of the estate conveyed by the Hahs' deed. By this deed from Hahs to Muhlenberg the location of the eastern line of the railroad was definitely fixed as to plaintiff, so that he could not claim beyond it. There was no evidence to warrant the court in submitting the questions raised by the plaintiff's first and second points, to the jury. There was nothing tending to prove an agreement between Hahs and the railroad,

made after the delivery of the deed, to fix the limits of the land to which the company would be entitled. The court has no right to affirm a point "if the facts should be as contemplated," when there are no such facts in evidence: Whitehill v. Wilson, 3 P. & W., 415; Stouffer v. Latshaw, 2 Watts, 167.

*Cyrus G. Derr*, for defendant in error.—The vital question was Obert's title to the land in dispute. He produced conveyances to him, the descriptions in which embraced the same. This was followed by evidence of possession by himself and his predecessors under said deeds for more than forty years. Obert's witnesses showed that the fence, including the land in dispute, with his residue, was put there by Hahs under his covenant in his deed, and maintained for more than forty years, and this evidence was believed by the jury, making the conclusion contemplated by plaintiff's first three points irresistible, namely, that this fence marked the line according to the understanding of the parties. The Cotton Mill branch was not part of the defendants' original location, and there is no evidence to show how they procured their right of way over it. The construction of this branch cannot be said to have created a new centre line from which the company could reach out and grasp all adjoining land lying within thirty-three feet of it. This is practically the defendants' claim in regard to said branch.

Mr. Justice CLARK delivered the opinion of the court, October 5th, 1885.

This is a proceeding under the general railroad law, for the assessment of damages to Francis J. Obert, for a strip of land in the city of Reading, taken and appropriated by the Philadelphia & Reading Railroad Company for an additional track. The plaintiff claims that he is the owner of the land in question, and that he is entitled to recover the damages which he has suffered in consequence of such appropriation. The defendants deny that he is, or ever has been, the owner, and claim that the title thereto became vested in the defendants, in fee simple, under a deed of Henry Hahs, dated 11th August, 1835, and that the additional track was, in fact, laid upon their own ground.

It is admitted, that at the time of the original location of the Philadelphia & Reading Railroad, in the year 1835, Henry Hahs was the owner of a lot of land, embracing the premises in dispute, and that by deed dated as aforesaid, he conveyed a portion thereof to the company, described as follows: "All that certain piece or parcel of land situate in the borough of Reading, Berks county, comprehending and being the land on

which the said Philadelphia & Reading Railroad is located, and about being constructed, on and through the lot of land of the said Henry Hahs."

Subsequently, on the 12th July, 1839, Hahs conveyed his land, lying east of the location of the railroad, to Dr. Hiester H. Muhlenberg, according to certain lines, with the courses and distances given; the western line of the land conveyed being "along the eastern bank of the railroad, south $14\frac{1}{4}$ degrees west, $15\frac{1}{4}$ perches," &c. On the 31st May, 1854, Muhlenberg conveyed the same and other lands to Robert Tibbets, from whom the plaintiff derived his title. In the last mentioned deed, and in the deed to Tibbets the land is described as bounded " on the west and northward by the Philadelphia & Reading Railroad, and the branch railroad leading to the Cotton Mill."

Thus it appears that the company purchased, and now own in fee simple, the ground covered by their location, and the eastern line of that location is the western line of the plaintiff's land. There cannot be any intervening land, for although the lines in the deed from Hahs to Muhlenberg are descriptive, by courses and distances, it is clear that the conveyance is to the railroad line. The vital question in the cause is, therefore, as to the actual original location of the railroad, and the extent of the appropriation to it.

It will be observed that the deed to the company is not descriptive of the land conveyed, further than that it is for that part of the lands of Hahs, " on which the Philadelphia & Reading Railroad is located, and about being constructed." The drafts of the original location, if there be any in existence, have not been given in evidence ; and as no particular marks or monuments are found upon the ground, it is very difficult now, after the lapse of fifty years, to determine either the exact location or the extent to which lands were appropriated.

By the charter the company was fully empowered " to enter in and upon, and occupy all lands on which the said railroad or its depots and warehouses may be located, or which may be necessary," &c., "provided, that the said railroad shall not, except in deep cuts and fillings, or at points selected for depots, or engine and water stations, exceed four rods in width," &c.

In the condemnation of property for railroad purposes under the charter, the company had full power to appropriate such width of property as would furnish four rods of an actual roadbed; and if, for a proper consideration, the land owner should re-lease the right of way, or convey the lands to be covered by the location, without designation of lines, or re-

striction as to width, the company could, without doubt under the re-lease or conveyance, appropriate to the extent fixed by the statute; the writing may well be presumed to have been made with reference to the law as it existed at the time.

The deed from Hahs to the company, although indescriptive in form, designating the lands covered by the location in the most general terms, would appear to refer to a location already made upon the ground; it was for the land on which the railroad "is located and about being constructed." If the railroad was at the time, in fact located, the reference became a descriptive part of the subject of the conveyance, and when we come to construe the effect of the conveyance, the inquiry must be as to the actual location at the time. It was competent of course for the company to construct its road, in whole or part, upon a location of less than four rods; that was merely the legal limit, which except for cuts, fills, &c., the company could not exceed; and we can see no ground when the question is raised collaterally, for the presumption, in the absence of proof, that the taking was to the full extent allowed by law. In the case of Prather v. West. Union Tel. Co., 14 Am. & Eng. R. R. Cases, 1, cited by the plaintiff in error, it was held, that "where by statute a railroad company is authorized to appropriate for its right of way a strip sixty feet in width, and it enters upon land whereon it builds its road but does no act indicating clearly the breadth of the strip taken, it will be inferred that the company has appropriated a strip as wide as is permitted by the statute." But, in that case, the charter to the Jeffersonville Railroad Company was for the construction of a railroad "sixty feet wide;" this was the width which the legislature fixed and determined upon as the proper and necessary width of the contemplated railroad; authorizing the company, however, in the prosecution of its enterprise, to enter upon, take, and hold in fee simple, real estate of a less width than sixty feet, if its president and directors might deem such action necessary. "It might have limited its appropriation," says the court in that case, "at the time it was made, to a width less than sixty feet; but not having done so, it must be conclusively presumed, we think, that by its entry upon, and its construction of its road over and through the lands of Prather, the railroad company appropriated, took and held such lands to the full width allowed by its charter, namely, 'sixty feet wide.'"

In this case, however, the defendants were authorized to construct a railroad, not "four rods wide," but one that shall not "exceed four rods in width;" the distinction is obvious and it is clear that the case cited does not sustain the principle contended for. If this were a proceeding to assess dama-

ges for the original taking, and the company had entered upon, and constructed their road over the plaintiff's land, doing nothing to indicate an appropriation less than four rods in width, it would be presumed, of course, in the first instance, that the taking was to the full extent allowed by law, because until the company, by some decisive act, has chosen to take less, it is entitled to the full width; after the purchase of the right of way, however, in a contest involving its lines, the company must establish the extent of its ownership in the same manner, and according to the same measure of proof as others.

Preliminary to the question of damages, of course, is that of the plaintiff's title; the claimant of compensation must aver and prove his title, but proof of possession by actual occupancy, under a claim of title, for thirty or forty years as in this case, in a proceeding to assess damages, would certainly be *prima facie* evidence of title. Assuming that a railroad is in a qualified sense a public highway, held under the Commonwealth's right of eminent domain, under the charter, and that title to the lands covered by the location as against the company could not be acquired by adverse possession, the exhibition of such a *prima facie* right devolved upon the company, the burden of proof that the lands in question were embraced in that location; until that fact did appear the principle of law invoked could have no application to the case.

What land then did the company at the time, and in this particular place, appropriate and actually embrace in the location? This was the substantial inquiry in the cause, and was one for the consideration of the jury, to be determined under all the evidence in the case.

To establish the true location of a railroad in Pennsylvania, is a matter peculiarly within the power of the railroad company; there is not, and never has been, any requirement, that the location should be any where filed, or recorded, for the benefit of parties interested. The papers indicating the lines are the property of the company, and are ordinarily inaccessible to persons having no connection with the company; but in this case we are furnished with no maps or papers exhibiting the original location, and there are, as we have said, no monuments on the ground.

The company contends that the eastern line of the railroad is fixed by the deed from Hahs to Muhlenberg, dated 12th July, 1839. The description given in that deed begins at " a post in a line of South street;" but where this point is, was and still is a matter of serious dispute; the location of the line "along the eastern bank of the railroad, south fourteen and a fourth degrees west, fifteen and one fourth perches,"

depends of course upon the place of beginning. The defendants say, that this "post" is a point in the line of South street, at the west side of the old Lewis Ferry road; whilst the plaintiffs contend, that it is a point one and nine tenths perches west of that road. The survey shows that if the lines are run according to the plaintiff's contention, the line referred to would, as we understand it, run near to, but not with an "old fence," which the plaintiff claims to have been the line, and would include the ground taken for the additional track; but, beginning at the point claimed by the defendants, the survey will exclude that ground. The proper location of the lines was for the jury; that the question was not discussed at the trial is perhaps unfortunate, but is not ground for complaint here. The rights of the railroad company are to be measured by the deed of Hahs to the company, and the location therein referred to, and not by any subsequent deed conveying the residue. But as one of the lines of the deed to Muhlenberg is "along the eastern bank of the railroad south fourteen and one fourth degrees west, fifteen and one fourth perches," the courses and distances of that deed, being the deed under which the plaintiff claims title, may furnish some evidence as to where that location actually was. The description might be deemed equivalent to a deliberate statement of the parties to it, that a line running from the northwest corner of the lot conveyed, with the bearing south fourteen and one fourth degrees west, would run along the eastern bank of the railroad. But no principle in the nature of an estoppel could apply, as no one appears to have acted upon the admission to his injury. The evidence was, therefore, not of a conclusive character; this statement of the parties was simply to be taken with other evidence in the cause, to determine the precise location of the railroad line; because if the courses and distances of the deed did exclude the land in dispute, they would yield to the call for the eastern bank of the railroad, if the location of that bank could be otherwise clearly established.

It appears that by the deed of Hahs to the company, it was provided that Hahs was "to make and keep a fence on his residue adjoining land, along said railroad, at his own costs and charges." The plaintiff contended that such a fence was at the time or soon afterwards made, pursuant to this provision of the deed, and was maintained and kept upon the same line, continuously from that time, until the occupation of the land by the company for the additional track, a period of forty years and upwards.

The deed from Hahs to the company, dated 11th August, 1835, as we have seen, did not define the land intended to be

conveyed by metes and bounds; it was for the lands covered by the location. It was undoubtedly competent, therefore, for the parties, either at the time or afterwards, to designate the limits of that location, and if they did, both parties would be bound by the limits fixed; and, if the fence referred to, was then, or soon afterwards, erected by the grantor, and was maintained by him and his assigns upon the same line for more than forty years, with the acquiescence of the company, it will be presumed to have been built pursuant to the covenant of his deed, and to be the line of the conveyance. The owner is not ordinarily bound to put his fences on the line of his land, and no presumption arises from his failure so to do; but in this instance the covenant of Hahs was to build the fence along the railroad, and that he built and maintained such a fence in pursuance of the covenant, with the acquiescence of the company, if the facts be as alleged, would certainly be evidence that the fence was along the railroad, according to the line established by the parties. So also, where the terms of a grant of a right of way are general and indefinite, its location and use by the grantee, acquiesced in by the grantor, will have the same effect as if it had been fully described by the terms of the grant: Warner *v.* Railroad Co. (Ohio), 11 Am. & Eng. R. R. Cases, 417. It is not pretended that at any time since the location of the defendants' road, until the time of the taking for the additional track the company used, or claimed the right to use, the ground east of the fence built by the plaintiff; on the contrary it is conceded that the parties have during all that time continuously used and occupied the ground, each to the line of the fence, and that each acquiesced in the use by the other.

It is objected, however, that there was not sufficient evidence of the facts alleged, to justify a submission to the jury. We have the evidence of the covenant of Hahs in 1835 to make and maintain a fence, and proof that a fence was soon afterwards made, and was maintained until the year 1880, when the additional track was laid. William R. Seitzinger testifies in substance, that "in the beginning" the company had only one track, which was completed in 1838; that a fence was afterwards built from fifteen to twenty feet from the base of the embankment of the railroad; that not a great while afterwards, perhaps two or three years, the second track was laid, on the eastern side of the first track, which brought the embankment within five or six feet of the fence. In these statements he is to some extent corroborated by Jacob Bowers, Henry Seiders, and Lewis Eisenhower. The last witness also testified that he knew the fence from the beginning, and that to the best of his knowledge it was never moved. Francis J.

[Lash v. Von Neida.]

Obert, the plaintiff, testified that he purchased the property in 1854, and that at that time there was an old fence along the railroad, close up to the embankment; that from time to time, as the company filled on their side of the fence, he filled on his side, and that the fence was at three different times lifted up, but that it was always kept upon the same line on which he found it when he bought the property. It does not appear by whom the fence was built, but the fair and reasonable presumption is, that it was built pursuant to the provision of the contract. Upon such evidence the court was certainly justified in submitting the question to the jury. It was further contended, however, that the strip of land in question, was embraced in the right of way of the Cotton Mill branch. We have no evidence, however, how this right was acquired or to what extent, and there can, under such circumstances, be no presumption which will extend the right beyond what was actually appropriated, and was used by the company for the purpose. In the ascertainment of the damages, considerable latitude was allowed in the examination, but we discover no error which would call for a reversal of the judgment.

It is not necessary, we think, to refer in detail to the several assignments of error. What we have said disposes of the several questions intended to be raised. The charge is, in some respects, subject to criticism; it contains expressions which are perhaps incongruous and erroneous, but they are not such, we think, as damaged the cause of the defendant, indeed the charge as a whole was in many respects more favorable to the defendants than they had any right to expect.

We are of opinion that the assignments of error are not sustained.

The judgment is affirmed.