[No. 8274.   Department Two.   February 19, 1910.]

FRED McADAM, *Appellant*, v. BENSON LOGGING & LUMBERING COMPANY *et al., Respondents.*[1]

VENDOR AND PURCHASER—BONA FIDE PURCHASER—NOTICE OF EASEMENT—ESTOPPEL. The purchaser of land subject to an easement for a logging road cannot assert an abandonment of the easement by nonuser, where, prior to his purchase, use of the easement had been resumed with the consent of the original owner.

EASEMENTS—ABANDONMENT—EFFECT OF NONUSER. Mere nonuser for ten years of a right of way granted for a logging road will not defeat the right, or amount to abandonment of the easement, where no time was stipulated for the use and no provision was made in the grant for restoration of the land on failure to use the same.

EASEMENTS — ABANDONMENT — INTENT — EVIDENCE — SUFFICIENCY. Abandonment of an easement is not shown by the fact that the rails of a logging road were taken up and the right of way not used for ten years, where there was no provision that the land should revert by nonuser, the rails were taken up for temporary use pending litigation of the title to the timber lands served by the road, and the financial depressions of 1893 compelled further suspension of operations for several years, it being testified that there was no intention to abandon the road.

EVIDENCE—JUDICIAL NOTICE—FINANCIAL PANIC. The court will take judicial notice of the financial panic prevailing in 1893 and subsequent years.

ADVERSE POSSESSION — ESTOPPEL TO ASSERT — LACHES — EASEMENTS—ABANDONMENT. The plaintiff in ejectment, owner of the dominant estate, cannot recover land granted for a logging road or defeat the easement by reason of the fact that the rails were taken up and the right of way not used for the statutory period of ten years, where it appears that there was no intent to permanently abandon the easement, and that plaintiff had notice of the rehabilitating of the road, assisted in hauling the rails, arranged for gates at crossings, and for several years stood by while the railroad was rebuilt, without objection or demand for possession.

Appeal from a judgment of the superior court for Cowlitz county, McCredie, J., entered June 7, 1909, upon findings in favor of the defendants, in an action to quiet title, etc., after a trial on the merits.   Affirmed.

[1]Reported in 107 Pac. 187.

*B. L. Hubbell*, for appellant.

*Coovert & Stapleton*, for respondents.

DUNBAR, J.—This is an action to recover possession of, and quiet title to, a strip of land claimed by the appellant, and occupied by the respondent Wisconsin Logging & Timber Company as a logging railroad under a contract of purchase from the respondent Benson Logging & Lumbering Company. Ordway and Wideler procured the right of way, and, through different conveyances, the property came into the ownership and possession of the respondents in this case.

There are two tracts of land over which this logging road runs. One Swenson was the owner of one tract, and the contract was made with him in 1895 by the Benson Logging & Lumbering Company, wherein it agreed to, and did, give to said Swenson the sum of $500 in consideration of a right to lay a portion of the track in question. Afterwards, desiring to extend its main line across the Swenson premises in another place, another agreement was entered into for certain considerations therein stated. The second cause of action involves the land owned in 1883 by Robert McAdam and wife. On the 26th day of February, 1883, McAdam and wife executed a written instrument, which was not acknowledged, providing for the granting of a right of way to Ordway and Wideler. This instrument was assigned to the Columbia River & Grays Harbor Railroad Company by Ordway and Wideler, and that company at great expense built a private logging road on the premises described in the instrument, and for several years continued to operate the road for its own benefit. In March 1889, Robert McAdam died testate, devising the premises described in the second cause of action to his son, Fred McAdam, who is the plaintiff herein. Upon trial of the case the action was dismissed, and plaintiff appealed.

The legal questions involved in this case, both as to the consideration and the doctrine of equitable estoppel, were con-

sidered in a similar case decided by this court on the 11th day of February, 1910, *Koschnitzky v. Hammond Lumber Co.*, *ante* p. 320, 106 Pac. 900. In this case, as in that, we have had no difficulty in arriving at the conclusion that the doctrine of equitable estoppel should be applied, both as to the Swenson tract and the McAdam tract of land; so that the only distinguishing characteristic of this case is involved in the fact that, in 1891, as near as can be determined from the record, the rails which had been used on this right of way were removed to Cathlamet, and were not returned till the year 1901. From this fact it is urged by the appellant that there was an abandonment by the respondents of their right of way, and that, correspondingly, there was a right in appellant established by adverse possession. So far as the Swenson tract of land is concerned, at the time that the appellant obtained title from Swenson in 1905, the rails had been restored to their former position and the railroad had been in operation for several years, so that the appellant took title with full knowledge of the rights of respondents in this easement.

It would seem, at first thought, that the removal of rails from a right of way and the keeping of them off of the right of way for ten years might indicate an abandonment. But an abandonment is as much a matter of intention as of time. Nor will mere nonuser defeat the right to occupy a right of way for purposes expressed in a grant, when no time has been stipulated for the use; and the record shows that, in the written agreement between McAdam and his wife and the respondents' predecessors, there was no provision for the restoration of the land to the McAdams when the grantees should fail to use the land for a right of way. But in addition to this, the record shows plainly to our mind that there was no intention to abandon this railroad or right of way, but that the rails were moved for temporary use in another place, the company having timber near Cathlamet that it seemed more advisable to log at that time than the timber

which it possessed in the neighborhood of the location of this road. Mr. Ordway positively testified that there was no intention to abandon the road, but that they left that neighborhood temporarily on account of the decision of the supreme court in relation to the ownership of the land which was owned formerly by the Northern Pacific Railway Company, from which he had purchased the greater part of his holdings, and that he suspended operations there until the title to the land was settled; that before that happened, the dull times came on; that he was under bond to remove some timber down at Cathlamet which he owned, before a certain time; that these rails were taken up and moved down there for the purpose of moving that timber within the time; that in the meantime the hard times, which prevailed in 1893 and for several subsequent years, came on—times concerning which this court has several times taken judicial notice—and that they were compelled by stress of circumstances to suspend operation in the neighborhood of the road until 1901, when they returned to that location, bringing the rails back and placing them exactly as they were placed originally and upon the original right of way; that so far as the Swenson tract was concerned, this was done without any objection on Swenson's part, both he and his boys being hired to help lay the rails.

It also appears that there was no objection on the part of the appellant, Fred McAdam; that he knew of the return of the rails and of their being placed in their original position, and while he denies the statement made by one of the respondents that he helped to lay the rails, he does say, in another portion of his testimony, that he had a contract for hauling these rails at fifty cents a ton. The testimony on the part of the respondents shows, and we are impressed with its truthfulness, that he not only knew of the resumption of operations on the railroad, but was consulted in regard to where certain gates should be placed, and where cattle guards should be placed, the original agreement having made

provision for the placing of cattle guards where they were necessary; that the gates were put in as respondents understood McAdam wanted them; that it later turned out, after they had fenced the tract, that the gates were not at the places where McAdam wanted them; that McAdam came along and said they had not put them in just right, and had them change four or five posts and put them in at a different angle so as to get the gates at a little different position. And it certainly appears, without any denial whatever, that, for a period of at least several years, viz., from the rehabilitating of the railroad in 1901, until a couple of years before the commencement of this action, the appellant stood by, saw the railroad being rebuilt and restocked without any objection or demand for the possession of the land, and that no legal demand was made for the same until the commencement of this action in 1908.

Under all the circumstances of the case, we think that the record fails to show an abandonment on the part of the respondents by nonuser or otherwise, and that appellant cannot therefore invoke the statute of limitations against them.

The judgment will be affirmed.

RUDKIN, C. J., PARKER, MOUNT, and CROW, JJ., concur.