## FT. WORTH & D. C. RY. CO. v. SOUTHERN KANSAS RY. CO. OF TEXAS et al.

(Court of Civil Appeals of Texas. Amarillo. Nov. 2, 1912. Rehearing Denied Nov. 23, 1912.)

1. APPEAL AND ERROR (§ 742*) — BRIEFS—PROPOSITIONS—JOINT PROPOSITIONS.

Appellee's brief, in submitting four "counterpropositions to all of appellant's assignments" of error, violated the Court of Civil Appeals rules.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. PUBLIC LANDS (§ 172*) — RAILWAY GRANTS—DESCRIPTION OF LAND—CERTAINTY.

The grant of land to the Ft. Worth & Denver City Railway Company, by its special charter in 1873 (Sp. Laws 1873, c. 208), providing "the right of way, to be held to the extent of 200 feet in width, is hereby granted to said railway company through the public lands of Texas," sufficiently designated the right of way granted, and was not void for uncertainty; Rev. Civ. St. 1911, art. 6482 (Sayles' Ann. Civ. St. 1897, art. 4423), giving every railway corporation a right of way for its line of road over any state lands, and Rev. Civ. St. 1911, art. 6484 (Sayles' Ann. Civ. St. 1897, art. 4425), giving to such corporation the right to lay out its road, not exceeding 200 feet in width.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 523–543; Dec. Dig. § 172.*]

3. PUBLIC LANDS (§ 172*)—RAILROAD LAND GRANT—TIME EFFECTIVE.

The grant of a right of way through the public lands, by special charter in 1873 (Sp. Laws 1873, c. 208), to the Ft. Worth & Denver City Railway Company became effective in præsenti, and not after the first 25 miles were built, if completed within three years, and the completion of 30 miles every two years thereafter until completed, as provided by section 12 of the act.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 523–543; Dec. Dig. § 172.*]

4. RAILROADS (§ 82*)—RIGHT OF WAY—ABANDONMENT—EVIDENCE.

In trespass to try title to a strip granted to plaintiff as a railroad right of way, evidence as to the necessity of using the land for switches was admissible for plaintiff on the issue of abandonment.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 213–219; Dec. Dig. § 82.*]

5. EVIDENCE (§ 318*)—DECLARATIONS—LETTERS.

In trespass to try title between two railroad companies, letters passing between defendant's officials, relating to the land in controversy, were not admissible, not binding plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200; Dec. Dig. § 318.*]

6. EVIDENCE (§ 244*) — ADMISSIONS — BY AGENTS.

Agreements or concessions by plaintiff's superintendents with reference to another part of its right of way than that in controversy, though a part of the same section, would not bind plaintiff, so as to be admissible in evidence in trespass to try title between it and another railroad company.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 916–936; Dec. Dig. § 244.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

7. EVIDENCE (§ 317*)—ADMISSIBILITY.

It was error to permit a witness to testify to the contents of a letter which was not itself admissible in evidence, as not binding the other party.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

8. TRESPASS TO TRY TITLE (§ 39*)—EVIDENCE—OTHER TRANSACTIONS.

Evidence relating to an interlocking agreement between plaintiff and defendant railroad companies as to a crossing not touching the land in controversy was not admissible in trespass to try title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 54; Dec. Dig. § 39.*]

9. ESTOPPEL (§ 93*)—KNOWLEDGE.

Evidence that plaintiff railroad company did not object when defendant's track was laid across the land in controversy was not admissible to create an estoppel by silence against plaintiff in trespass to try title, if plaintiff's officials did not know at the time that it owned the land.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 264–275; Dec. Dig. § 93.*]

10. EVIDENCE (§ 65*) — PRESUMPTIONS — KNOWLEDGE OF SPECIAL STATUTES.

A special statute granting a right of way to a railroad company through the public lands of the state is a public law, so as to be constructive notice to another railroad company of the extent of the rights of the grantee; every one being presumed to know the law.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 85; Dec. Dig. § 65.*]

11. EVIDENCE (§ 65*) — PRESUMPTIONS — KNOWLEDGE OF LAW.

There is a pseudo-presumption that every one is presumed to know the law.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 85; Dec. Dig. § 65.*]

12. ESTOPPEL (§ 97*)—ESTOPPEL BY DEED—PERSONS BOUND—PARTIES.

Any act by plaintiff, pursuant to an agreement between itself and another railroad company, could not be taken advantage of as an estoppel by defendant railroad company, which was not a party thereto.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 289; Dec. Dig. § 97.*]

13. TRESPASS TO TRY TITLE (§ 40*)—ADMISSION OF EVIDENCE.

In trespass to try title to a tract claimed by plaintiff railroad company as a part of its right of way, a deed from plaintiff to defendant company, transferring another part of its right of way, was not admissible.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

14. PUBLIC LANDS (§ 172*)—RAILROAD LAND GRANTS—FORFEITURE.

The failure of the Ft. Worth & Denver City Railway Company, which was granted a right of way over the public lands by its special charter in 1873 (Sp. Laws 1873, c. 208), to file maps of its right of way with the Commissioner of the General Land Office within six months after organization, as required by section 15 of the charter, was not a forfeiture of its rights; the charter containing no conditions of forfeiture, and the state not having sought to compel a forfeiture.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 523–543; Dec. Dig. § 172.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by the Ft. Worth & Denver City Railway Company against the Southern Kansas Railway Company of Texas and another. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Spoonts, Thompson & Barwise, of Ft. Worth, and Turner & Wharton, of Amarillo, for appellant. Madden, Trulove & Kimbrough, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellees.

HALL, J. This suit was instituted by the Ft. Worth & Denver City Railway Company, in the district court of Potter county, against the Southern Kansas Railway Company of Texas and the Pecos & Northern Texas Railway Company to recover a strip of land lying immediately south of plaintiff's main track across section 156, block, 2, A. B. & M. surveys, in Potter county, Tex. The strip of land in question is 50 feet wide and 750 feet long; the northern line thereof being 50 feet south of and parallel with the center of plaintiff's main track, and its southern line being 100 feet south of the center of said track. Plaintiff's petition is in the form of trespass to try title, and this is followed by a second count, pleading specially its title, in which it set forth a history of the granting of its special charter in 1873 (Sp. Laws 1873, c. 208), its compliance with the requirements of its charter, and further alleging that since the completion of its road the town of Amarillo had grown to be a city of over 10,000 inhabitants, and that the land in controversy, which is a part of the town of Amarillo, is now needed for the construction of switch and storage tracks, and for the proper conduct of plaintiff's business as a common carrier.

The defendants answered by general demurrer, general denial, plea of not guilty, and pleaded the statutes of limitation of three, four, five, and ten years, set up valuable improvements, and by special answer attacked plaintiff's right to the land in controversy, because of plaintiff's failure to comply with the requirements of its charter. Plaintiff filed a supplemental petition, attacking the special answer of the defendants, and a special exception, which was overruled. There was a trial before a jury, and after the evidence was all in the court peremptorily instructed the jury to find in favor of defendants, and this appeal is prosecuted from the judgment rendered upon such findings.

Plaintiff's assignments of error do not comply with rules 24 and 25 for the Courts of Civil Appeals (142 S. W. xii); but, by reason of the fact that at the time the appeal herein was perfected said rules had not been printed and generally distributed, we are not inclined to heed the objections of appellees to the sufficiency of the assignments as heretofore announced by us in the case of Davidson v. Patton, 149 S. W. 757.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

[1] Our attention is also directed to the form of appellees' brief, wherein they first submit four "counterpropositions to all of appellant's assignments." This is manifestly a violation of the rules, but we waive the informality and give both briefs full consideration. The principal questions presented for our consideration are these: (1) Does the grant contained in appellant's charter in the following words, "That the right of way, to be held to the extent of 200 feet in width, is hereby granted to said railway company, through the public lands of Texas," etc., sufficiently designate the property therein sought to be granted, or is it void for uncertainty? (2) If sufficiently certain, was the grant effective in præsenti, or was it intended to take effect in the future, after the first section of 25 miles of the road was built, if completed within three years from the passage of the act, and an additional 30 miles every two years thereafter until completed through the state, as provided in section 12 of the act, and did the effectiveness of the grant further depend upon compliance with section 15 of the act, which is: "That within six months after the organization of the company incorporated by this act, it shall be the duty of said company to file with the Commissioner of the General Land Office of the state plans and maps, showing the line upon which it is intended to construct said road."

[2, 3] We are cited to numerous authorities in the briefs bearing upon these issues, and after a careful review of them all we have concluded that the grant of the right of way was sufficiently certain in its terms, and that it took effect in præsenti, and in support of our conclusion quote as follows: "It is claimed that the deed to the right of way was void because of the indefiniteness of the description. The road, at the date of the deed, had been located across the Pearson survey, and was a thing in existence. The conveyance of the right of way evidently had reference to the road as it existed, and conveyed the right to occupy a strip of land 200 feet wide along its line. But, had the situation been otherwise, the deed was sufficient, and would have authorized the railway company to cross the land with its road, selecting its own route. The easement conveyed is the right of way 200 feet wide across the James Pearson survey, and it is contended that this entitled the company to occupy and use for its purposes, not necessarily all of the strip 200 feet wide, but only so much thereof as was essential to the purposes for which the right was obtained, i. e., a convenient passage across the land in a proper performance of its duties by the company. But the conveyance is of a right of way 200 feet wide over a larger tract, and not simply a right of way over a strip of land 200 feet wide. The grant defines the extent of the right of way, and the court cannot restrict it to narrower limits, though it should be of the opinion that so much was not needed for the purposes intended. The right of the railway company, such as it is, is, as between it and its grantor, the same over every part of the land designated in the grant." Olive v. Sabin & E. T. Railway Co., 11 Tex. Civ. App. 208, 33 S. W. 139. The deed conveying the right of way in the above-quoted case conveyed the "right of way 200 feet wide over and upon" the said Pearson survey.

As further bearing upon the question of the necessity of identifying the land upon the ground at the date of the charter and the particularity of its designation, we call attention to article 6482, Rev. Stat., 1911 (Sayles' Civ. Stat. art. 4423): "Every such corporation shall have the right of way for its line of road through and over any lands belonging to this state." And it is further provided in article 6484, Rev. Stat. 1911 (Sayles' Civ. Stat. 4425): "Such corporation shall have the right to lay out its road not exceeding 200 feet in width and to construct the same." This is a general grant to any and all railway corporations desiring to construct a railway through any public domain of the state. Prior to its enactment, as said by Gill, J., in Ayres v. G., C. & S. F. Ry. Co., 39 Tex. Civ. App. 561, 88 S. W. 436: "A grant of a charter to construct a railroad carries with it, either directly or inferentially, a grant of right of way through and over such tracts on its route as were yet a part of the public domain." Further quoting from T. C. Ry. Co. v. Bowman, 97 Tex. 420, 79 S. W. 296, Gill, J., said: "The general laws which had been enacted regulating railways theretofore seem to have assumed, rather than to have expressly declared, the existence of the right over the lands of the state; for the provisions for the acquisition of such right by purchase or condemnation apply only to private property. The general law passed in 1876 [Laws 1876, c. 97] for the chartering of railway corporations omitted any express provision as to right of way upon lands belonging to the state, but, as before, regulated the acquisition of such rights over private property by agreement or condemnation." Justice Williams, after this comment upon the state of the law, proceeds to show that the absence of any provision for the acquisition of right of way over public properties pervaded all general legislation on the subject until the Revision of 1879. Rev. St. 1879, c. 8. While it is not expressly held, nor was it necessary to be decided in the case cited, it is inferentially held that prior to the passage of the act a charter, authorizing the construction of a railway through a country held in part by private ownership and in part by the state, the general laws providing for acquisition of right of way was from private owners, but leaving the company powerless against the lands of the state, impliedly granted the right to construct through and over the public domain. The grant is so

necessary to the exercise of the general powers conferred, it is inevitably carried by the general terms of the grant. This is in accord with the elementary rule of construction that a power necessary to the exercise of a power already granted will be implied. We are of the opinion, therefore, that by its charter the Great Northern Company acquired the right to enter upon and appropriate so much of the public domain over which its route was projected as was necessary for its right of way, not to exceed the prescribed width, and that having done so the width actually appropriated was not affected by the subsequent grant and by the state of the Lang survey. By the description in the grant the grantees had actual notice of the railway company's existence and its powers and the fact that the Wilson Lang grant had been located along its line. They took subject to the rights acquired by the company. A land certificate issued by the Commissioner of the General Land Office for 640 or any number of acres of land, as a general rule, authorizes the holder thereof to locate the same wherever the holder thereof can find unappropriated public domain of the class designated in the certificate, and, although the cases are numerous where land certificates and the two articles quoted above from the general railway law of the state have been considered by the courts, in none of the cases are we able to find where the articles of the statutes relating to railroads and special acts of the Legislature granting lands have been questioned by reason of uncertainty; nor are we cited to any case declaring any railroad right of way, under such statutes, void by reason of such uncertainty.

In Bybee v. O. & C. R. Co., 139 U. S. 663, 11 Sup. Ct. 641, 35 L. Ed. 305, the question was considered which is raised by the appellees in this case, and it was there held that lands granted by Congress to aid in the construction of railroads do not revert, after condition broken, until a forfeiture has been asserted by the United States, and that a person subsequently acquiring any part of the public lands over which a railway company had been granted a right of way by Congress took such land subject to the prior right of the railway company, and used this language: "The distinction between a right of way over the public lands and lands granted in aid of construction of the road is important in this connection. As to the latter, the rights of settlers or others, who acquire lands by purchase or occupation between the passage of the act and the actual location and identification of the lands, are preserved unimpaired, while the grant of the right of way is subject to no such condition; and in the construction given by this court to a similar grant, in St. Joseph & D. C. Ry. Co. v. Baldwin, 103 U. S. 426, at page 430 [26 L. Ed. 578], a person subsequently acquiring any part of such right of way takes it subject to the prior right of the railroad com-

pany. As remarked by the court in that case: 'If the company could be compelled to purchase its way over any section that might be occupied in advance of its location, very serious obstacles would be often imposed to the progress of the road. For any such loss of lands by settlement or reservation, other lands are given; but for the loss of the right of way by this means, no compensation is provided, nor could any be given by the substitution of another route.' " In that case, by section 3 of the act of Congress (Act July 23, 1866, c. 212, 14 Stat. 210), there was granted to the O. & C. Railroad Company the right of way through the public lands to the extent of 100 feet in width on each side of said railroad where it might pass over public lands, including all necessary grounds for stations, etc.; and by section 6 of the act the companies were required to file their assent to the act within one year, and to complete the first 20 miles within two years, etc. Jones v. Erie & W. V. Ry. Co., 144 Pa. 629, 23 Atl. 251, is authority for our holding in this case that, in the absence of any designation of the boundaries of the plaintiff's right of way, the presumption is that it extends 100 feet on each side of the center of the main line of appellant's track as it has been constructed since the date of its grant in 1873, and that it is presumed to take the full width granted. To the same effect is Campbell v. Ind. & V. Ry. Co., 110 Ind. 490, 11 N. E. 482; Gaston v. Gainesville & D. Elec. Ry. Co., 120 Ga. 516, 48 S. E. 188; Kindred v. U. P. R. R. Co., 168 Fed. 648, 94 C. C. A. 112; P. & R. Ry. Co. v. Obert, 109 Pa. 193, 1 Atl. 398; Prather v. W. U. Telegraph Co., 89 Ind. 501; N. P. Ry. Co. v. Smith, 171 U. S. 261, 18 Sup. Ct. 794, 43 L. Ed. 157. While the evidence is not perfectly clear upon the point, we think the record shows that plaintiff's line of road had been surveyed and staked across section 156 prior to the time the section was awarded to Lester, under whom appellees claim. This, however, becomes a matter of secondary importance under the view we take of the case.

[4] The proposition under appellant's first assignment of error is that the land in controversy belonged to the plaintiff, and by reason of the growth of Amarillo it has become necessary to use this land for switches and storage tracks, and consequently the court erred in refusing to permit plaintiff to prove the necessity existing for the use of said land. This assignment is sustained, as the evidence was admissible upon the issue of abandonment.

The second, third, fourth, fifth, sixth, and seventh assignments of error are based upon the action of the court in admitting in evidence a statement of facts agreed to, together with certain letters attached thereto, and will be considered together. Counsel for appellant and appellees entered into an agreed statement of facts in order to save time and

expense of establishing the facts, which statement it was understood should not be introduced, unless objections made thereto by appellant should be overruled by the trial judge. This agreement related to a different tract of land lying west of the tract in controversy, but which was also 50 feet in width, and the northerly line of which was 50 feet south of the center of plaintiff's main track. It appears that plaintiff and its attorneys and officials had no knowledge of the extent of plaintiff's right of way, but were laboring under the impression that said right of way across section 156 was only 100 feet in width, and that during this time, on the 16th day of April, 1898, appellees secured a deed from the then owners of that particular portion of section 156 abutting upon plaintiff's right of way, which conveyed the particular strip of land referred to in the agreement in question. This is expressed in the agreement; and it is further shown that plaintiff, in 1897, constructed a siding, the south rail of which is along the north line of, and a few inches over on, the particular strip referred to in the agreement, and in rearranging its telegraph poles around its new depot, in 1897, a few posts were placed about eight feet over on said strip, where they remained until after appellee the Pecos & Northern Texas Railway Company secured its deed thereto on the 16th day of April, 1898. After securing the deed the said Pecos & Northern Texas Railway Company constructed its track along said strip, when, for the first time, the question as to the ownership thereof and the location of the true dividing line between plaintiff and said strip was raised. That the matter was brought to the attention of J. V. Goode, the then superintendent of appellant, who had a conference with one Faulkner, the general manager of the Pecos & Northern Texas Railway Company, when it was by them discussed. After which the work of the Pecos & Northern Texas in the construction of its track and sidings along said strip proceeded. The Pecos & Northern Texas Railway Company also constructed on said strip toolhouse, coalhouse, and express office, as well as a platform and passageway across the strip to appellant's depot, and held peaceable and undisputed possession thereof, without any knowledge upon its part, except such as may be imputed by law, until about the 15th day of August, 1902, when its agent observed that the Waters Pierce Oil Company had begun to place storage tanks on the north edge of said strip, and upon inquiry was informed by the agent of the oil company that the then superintendent of appellant, Mr. Scott, had given his permission for such construction, which resulted in another conference between the officials of appellant and appellee the Pecos & Northern Texas Railway Company as to their respective rights. Said agreement further states that in April, 1898, A. B. Spencer, the station agent of appellant at Amarillo, suggested the purchase of said strip, which was done on the 15th day of June, 1901. The letters referred to are dated May 26, 1906, written by Faulkner, the general manager of appellee, to J. W. Terry, its general attorney, and from said Faulkner to a Mr. Mudge, another official of appellee railway company. Appellant insists that the letters and the agreement should not have been admitted in evidence, because they related to a wholly distinct and separate tract of land from that involved in the suit, and therefore no action on the part of the plaintiff with reference to said former controversy could be binding in this suit.

Appellant further insists that the agreed statement is inadmissible as an estoppel, because none of the representations or admissions claimed to have been made by plaintiff's officials could have been relied upon by appellees, or could have induced any action on the part of defendants with reference to the land involved in this suit, causing them to change their position for the worse; that the law of estoppel does not apply because appellant's superintendents were ignorant of the true location of the boundary lines of plaintiff's right of way, and any representations or admissions made by them were through mistake, even though they had been authorized to make such admissions. It further insists that no authority was shown on the part of its superintendents to make any admissions or statements, and, as such action was not within the apparent scope of their authority, appellant should not be bound thereby. It further insists, under these assignments, that appellant is not estopped from asserting title to the tract in question in this suit, as neither of the superintendents were apprised of the true state of the title. Appellant further insists that appellee's general manager, Faulkner, had equal means with appellant's superintendent, Goode, of ascertaining the true state of the title which plaintiff had to the land under consideration at that time, because plaintiff's charter containing the grant was a public law, of which every one must take notice; consequently, even though it be held that Superintendent Goode was charged with notice by reason of this being a public law, the same rule charged Faulkner with notice, and the law of estoppel does not apply.

[5, 6] The letters, being correspondence between appellee's officials, were clearly not admissible and could not bind the appellant, who had no notice of them, even though they related to the tract of land in issue in this suit; and we think it is equally clear that any representations, agreements, or concessions made by appellant's superintendents, Goode and Scott, with reference to another and different part of its right of way, could not be extended so as to bind appellant rail-

way company with reference to any other portion of its right of way obtained under its charter, even though it should be a part of the same section of land. The agreement in question should not have been admitted in evidence.

[7, 8] The eighth assignment of error complains of the action of the court in permitting the witness Avery Turner, an official of defendants, to detail the contents of a letter written by one Cotter, still another superintendent of appellant railway. The letter itself was not admissible, and to permit the witness to state: "His letter of June 27th was his permission for the crossing. We established the point of crossing by the location of the line after I received Mr. Cotter's letter and his permission"—was stating, in effect, the contents of the letter itself, and this assignment is sustained. The testimony and letter were further inadmissible, for the reason that it related to an interlocking agreement made between the superintendents of the two roads, and that the crossing in no way touched the land in controversy.

[9] Under the ninth assignment of error, appellant insists that the court erred in admitting, over the objection of plaintiff, the testimony of the witness Avery Turner to the effect that plaintiff made no objection when the appellee Pecos & Northern Texas Railway Company's track was laid across the land in controversy. The evident purpose of this testimony was to create an estoppel against plaintiff by silence on its part when it was its duty to speak. It is plain from the record that at the time of the construction of the track by the Pecos & Northern Texas Railway Company across the land in question appellant's officials had no actual knowledge of the fact that appellant owned the land, and under such conditions estoppel by silence does not apply. Burns v. True, 5 Tex. Civ. App. 74, 24 S. W. 338; Stanley v. Schwalby, 85 Tex. 348, 19 S. W. 264; Pierce v. Texas Rice Development Co., 52 Tex. Civ. App. 205, 114 S. W. 857.

[10, 11] It is true that the right of way was granted by special act of the Legislature, but the act is also a public law, and was notice to the Pecos & Northern Texas Railway Company of the extent of appellant's rights. As a matter of fact, the officials of all the roads were ignorant of the provisions of the charter granting a right of way 200 feet in width across the section; but, since there is a pseudo-presumption that "every one is presumed to know the law," when the Pecos & Northern Texas Railway Company built its siding across the land, it must be held to have done so with full knowledge of the special act, and must be governed by the rules applicable to such condition. So appellant is not estopped by its failure to object to appellees doing something which both constructively and presumptively knew could not legally be done. In Preston et al. v. S. & E. T. Ry. Co., 70 Tex. 375, 7 S. W. 825, it is held that where a railroad company enters on land and constructs its road over it, without acquiring a legal right so to do, the materials used in its construction do not become the property of the landowner, but the company may remove them, and will not be liable as for a conversion.

[12] The Pecos & Northern Texas Railway Company was not a party to the interlocking switch agreement, but it seems from the record that this agreement was made by appellant and the Southern Kansas Railway Company of Texas; and therefore any act on the part of appellant with reference to that agreement could not be taken advantage of as an estoppel by the Pecos & Northern Texas Railway Company. It follows that the testimony of the witness Avery Turner on this point should have been excluded, and this assignment is sustained.

For the reasons stated in passing upon the ninth assignment, the tenth assignment is also sustained, and the testimony should have been excluded.

[13] The court admitted in evidence, over the objection of plaintiff, the deed from plaintiff to the Pecos & Northern Texas Railway Company, dated the 7th day of August, 1908, transferring a part of its right of way beginning on the western boundary of section No. 156 and which was no part of the land involved in this suit. This was error, and the eleventh assignment is sustained.

[14] It is insisted by the twelfth assignment that the court erred in refusing to give the peremptory instruction requested by plaintiff, requiring the jury to return a a verdict in favor of plaintiff. This assignment is overruled. In our opinion, as heretofore stated, the right of the appellant railway company to its right of way across section 156 was not lost by its failure to locate and build its road across said section until 1887, and to file its map with the Commissioner of the General Land Office, in compliance with section 15 of the charter. The special charter granted by the Legislature contains no condition of forfeiture, and no suit had been filed by the state to enforce a forfeiture by reason of appellant's failure to comply with its above-named conditions. Houston & T. C. Ry. Co. v. State of Texas, 170 U. S. 243, 18 Sup. Ct. 610, 42 L. Ed. 1023; Bybee v. O. & C. Ry. Co., 139 U. S. 663, 11 Sup. Ct. 641, 35 L. Ed. 305; McAdam v. Lumber Co., 57 Wash. 407, 107 Pac. 187.

The thirteenth and fourteenth assignments are overruled, as, in our opinion, the issues of fact should have been submitted to the jury.

The fifteenth assignment is sustained, since the evidence shows that the Southern Kansas Railway Company of Texas was not entitled to judgment for any part of the land

in controversy; that its line of road terminated at the northern boundary of the land in controversy; and that it could not be held to be in possession of any part thereof.

The sixteenth and seventeenth assignments are overruled.

For the errors pointed out, the judgment is reversed and the cause remanded.

HUFF, C. J., not sitting.