[No. 7779. Decided February 4, 1909.]

THE STATE OF WASHINGTON, *on the Relation of Lee A. Johnson et al., Plaintiff*, v. C. W. CLAUSEN, *State Auditor, Respondent*.[1]

COLLEGES AND UNIVERSITIES—NATURE. The state college of Washington is a state institution.

STATES—FISCAL MANAGEMENT—FUNDS OF STATE COLLEGE—PAYMENT TO STATE TREASURER—STATUTES—CONSTRUCTION—IMPLIED REPEAL—GENERAL AND SPECIAL ACTS. Moneys received by the treasurer of the board of regents of the State College from students' fees and rents and sources other than the general and state government are not a part of the "State finances" to be paid over by him to the state treasurer, within the meaning of the act of 1907, p. 179, entitled "an act relative to the finances of the state....," which provides that each state officer or other person authorized to collect moneys belonging to the state or any institution thereof shall each day transmit all moneys to the state treasurer, although such college is a state institution; and the prior laws, making it the duty of the treasurer to collect and disburse such moneys, are not impliedly repealed by the act of 1907, p. 179; since repeals by implication are not favored, and special acts are not presumed to be repealed by a general act; considering also the subsequent act of 1907, p. 423, directing the treasurer of the board of regents to receive the annual appropriation of the general government for experiment stations (MOUNT and DUNBAR, JJ., dissenting).

Application filed in the supreme court, December 11, 1908, for a writ of mandamus directing the state auditor to issue warrants. Granted.

*M. A. Folsom, W. J. Thayer*, and *B. B. Adams*, for relators, contended that the money deposited with the treasurer was a trust fund belonging to the state college, and was under the absolute control of the board of regents. *State ex rel. Koch v. Barret*, 26 Mont. 62, 66 Pac. 504; *Louisville v. University of Louisville*, 54 Ky. 642; *State ex rel. Spencer Lens Co. v. Searle* (Neb.), 109 N. W. 770; *Board of Education v. Town of Union*, 52 N. J. L. 69, 18 Atl. 571; *Regents*

[1]Reported in 99 Pac. 743.

of *University of California v. January*, 66 Cal. 507, 6 Pac.
376; *State ex rel. Armington v. Wright*, 17 Mont. 565, 44
Pac. 89; *Wyoming ex rel. Wyoming Agricultural College v.
Irvine*, 206 U. S. 278, 27 Sup. Ct. 613, 51 L. Ed. 1063.

*John D. Atkinson, Attorney General*, and *W. V. Tanner*
and *William W. Manier, Assistants*, for respondent, con-
tended, *inter alia*, that the State College of Washington is a
state institution, and that all its property is the property of
the state. *In re Royer's Estate*, 123 Cal. 614, 56 Pac. 461, 44
L. R. A. 364; *Thomas v. Board of Trustees of Illinois In-
dustrial University*, 71 Ill. 310; *Tucker v. Pollock*, 21 R. I.
317, 43 Atl. 369; *Neil v. Board of Trustees*, 31 Ohio St. 17;
*State v. Vicksburg etc. R. Co.*, 51 Miss. 361. All appropria-
tions must be made by the legislature, and the amount of such
appropriation must be distinctly specified. Constitution, art.
8, §4; Bal. Code, § 155; *State ex rel. Publishing Co. v.
Lindsley*, 3 Wash. 125, 27 Pac. 1019; *State ex rel. Board of
Regents v. Stover*, 47 Kan. 119, 27 Pac. 850; *Martin v.
Francis*, 13 Kan. 220; *State ex rel. Martin v. Humphrey*,
47 Kan. 561, 28 Pac. 722.

Gose, J.—This is a petition for a peremptory writ of man-
damus against the respondent, as auditor of the state, com-
manding him to draw against the state treasurer two war-
rants, in the sum of $1,000 each, in favor of Frank J. Barn-
ard, treasurer of the board of regents of the State College of
Washington, and a warrant in favor of J. B. Duthie in the
sum of $21.85.

The State College of Washington is an institution of
learning located within the state, created and existing under
and by virtue of the laws of the state. It has a board of
regents consisting of five members, one of whom, Frank J.
Barnard, is its treasurer. The board consists of Lee A.
Johnson, J. J. Browne, Peter McGregor, Frank J. Barnard,
and J. A. Anderson. The income of the college is derived in
part from the general and state governments, in part from

students for rent, and in part from the sale of its agricultural products. During the year 1908, the treasurer of the board received from sources other than the general and state governments the sum of $7,493.75. Said sum was deposited with the state treasurer by the treasurer of the board, under the belief that he was required to do so. Said sum is now on deposit with the state treasurer. Thereafter it became necessary to make certain improvements and disbursements and pay certain running expenses, and the board appropriated by two separate resolutions the sum of $2,000 therefor. Each resolution appropriated the sum of $1,000 from the amount theretofore deposited with the state treasurer. A proper demand was made upon the state auditor to issue warrants drawn against such fund, for such sums respectively, in favor of the treasurer of the board. At the same time, and by a separate resolution, such board appropriated out of said money so deposited the sum of $21.85, to pay for merchandise furnished the board for the use of the college. A demand was made upon the auditor to draw a warrant therefor in favor of J. B. Duthie, the creditor party. These several demands were refused. The board has not sufficient funds aside from said deposit to pay the necessary running expenses of the college. There are more than twelve hundred students attending the institution. It will probably be necessary to close the college unless said fund can be withdrawn for use by the board. A demand was made upon the state treasurer to pay said sums, but he refused payment except upon a warrant drawn by the respondent. The respondent interposed a general demurrer to the petition. The only question presented for determination is the sufficiency of the complaint, and whether it warrants the relief sought.

The law-making body of the state in 1891, Laws 1891, page 334 *et seq.*, enacted a law entitled "An act to provide for the location and maintenance of the agricultural college, experiment station and school of science of the state of Washington." The name of the institution was later changed to

the "State College of Washington." Laws 1905, p. 83. The applicable part of section 1 of such act is as follows: "There is hereby established an institution of learning to be known as the agricultural college, experiment station and school of science of the state of Washington." Under section 2 of the act, it is "open to the children of all residents of the state, and to such other persons as the board of regents may determine, under such rules of regulation and terms as may be prescribed by said board of regents." (Bal. Code, § 2512; P. C. § 7432).

Other applicable code provisions are as follows: Section 2516 (P. C. § 7436), provides that the management of the college, the care and preservation of all property of which it shall become possessed, the erection and construction of all necessary buildings, the disbursements and expenditure of all money, shall be vested in a board of five regents to be appointed by the governor by and with the consent of the senate; and that each regent, before entering upon the discharge of the duties of his office, shall give a bond in the sum of not less than $5,000, conditioned for the faithful performance of official duties. Section 2517 (P. C. § 7437), provides, that the board of regents shall meet and organize by electing a president and treasurer from their own number; that the treasurer shall, before entering upon the discharge of his duties as such, execute a good and sufficient bond to the state, with two or more sufficient sureties, in the penal sum of not less than $40,000, conditioned for the faithful performance of official duties, and to be approved by the governor. Section 2518 (P. C. § 7438), makes the treasurer the financial officer of the board and requires him to keep a true account of all moneys received and expended by him. Section 2520 (P. C. § 7440), provides that "the board of regents shall direct the disposition of any moneys belonging to or appropriated by" the college. Section 2527 (P. C. § 7447), requires the treasurer of the board to make disbursements of the funds in his hands upon the order of the board when countersigned

by the secretary.  Section 2513 (P. C. § 7433), provides:
"The governor of the state of Washington, superintendent
of public instruction, members of the legislature and county
commissioners, shall be *ex-officio* visitors of said college."

The respondent contends that, under the law of 1907,
pages 179, 180, it was his duty to refuse the requisition made
upon him by the board of regents and its treasurer.  In
passing upon the demurrer it will therefore devolve upon us
to consider the act, its relation to the former laws of the state,
and the respective duties of the parties under such statutes.
The act of 1907 is entitled, "An act relative to the finances
of the state of Washington and providing the time when and
manner in which moneys shall be paid into the state treasury."
The part of the act which the respondent treats as applicable
to the issue is as follows:

"Section 1.  That it shall be the duty of each state officer
or other person (other than county treasurers) who is author-
ized by law to collect or receive moneys belonging to the state
or to any department or institution thereof, to transmit to
the treasurer of the state each day, all moneys collected by
him on the preceding day, together with a statement of the
source from which each item of said money was derived and
to transmit to the state auditor a duplicate of said state-
ment."

The purpose of this act is clearly defined in its title, viz.,
that it was intended to apply to "the finances of the state."
It contains no repealing clause.  In accordance with his con-
struction of this act, the treasurer of the board of regents
paid certain money to the state treasurer.  It is urged by the
relators that the act has no application to the funds of the
state college.

The first contention of the respondent, that the college is
a state institution, may be conceded under the rule announced
in the following cases:  *In re Royer's Estate*, 123 Cal. 614, 56
Pac. 461, 44 L. R. A. 364; *Thomas v. Board of Trustees of
Industrial University*, 71 Ill. 310, *Tucker v. Pollock*, 21 R. I.

317, 43 Atl. 369; *Neil v. Board of Trustees,* 31 Ohio St. 15; *State v. Vicksburg etc. R. Co.,* 51 Miss. 361. The respondent next directs our attention to Bal. Code, § 155 (P. C. § 8485), by which it is made the duty of the state treasurer "to receive and keep all moneys of the state not expressly required by law to be received and kept by some other person." We do not see the applicability of this statute.

The important question is, do the words in the act of 1907 heretofore quoted, "or to any department or institution thereof," include moneys of the state college, as set forth in its petition? The obvious purpose of the act was to daily place in the hands of the state treasurer the "finances" of the state. The finances of the state in its broadest sense would probably include the money deposited by the college with the state treasurer. A reading of this act in connection with the then existing laws heretofore quoted makes it apparent that the legislature did not intend by this general language to reach out and include the fund in controversy. In addition to the code provisions to which reference has been made, Bal. Code, § 2514 (P. C. § 7434), provides for an extensive and costly course of instruction. Section 2515 imposes duties involving large expense on the board of regents. How can the board discharge its duties and meet the expenses of the same if its funds fall within the provisions of the act of 1907? The history of the general legislation of 1907 relative to this college forces the conclusion that it was the legislative intention to enlarge and increase its usefulness, rather than to lessen its efficiency. The act under consideration evidently contemplated that the money of the state arising from such sources as taxation and the sale of state lands, subject to the exceptions noted in the act, were the *finances* for which it provided. It does not purport to take from the board "the management of the state college and experiment station, the care and preservation of all property of which such institution shall become possessed, and the disbursement and expenditure of all money." It is worthy of observation that, not

only is the board required to give a bond, but the treasurer must obligate himself and his sureties in the sum of $40,000. Neither does this act by its terms take from the treasurer of the board the duty to make "disbursements of the funds in his hands on the order of the board," when properly counter-signed. The law offers no substitute for these provisions, nor does it in either letter or spirit relieve the board and treasurer, or either, of the duties theretofore imposed. If construed to mean state finances *strictissimi juris*, it leaves the officers in position to carry forward the object of their trusteeship. If given any other construction, it burdens them with all their former duties but takes from them the means of efficient performance.

It is a familiar canon of construction that repeals by impli-cation are not favored. In the case of *Meade v. French*, 4 Wash. 11, 29 Pac. 833, there was presented for the consid-eration of the court the construction of two acts. The old act provided that, in an action for assault and battery, if the plaintiff recover less than $10, he shall be entitled to costs only to the extent of the damages recovered. The later act provided that in any action in the superior court the prevail-ing party should be entitled to his costs except in actions in the jurisdiction of the justice of the peace, when commenced in the superior court. The court held that the later act did not repeal the former one. In the course of the opinion it remarked:

"Hence the rule obtains that repeals by implication are not favored, and courts will seek to harmonize the laws and pre-serve them, rather than declare them abrogated or repealed; and if by any reasonable construction they can stand to-gether, they will both be enforced; and in construing statutes for the purpose of ascertaining whether repugnancy really exists, as well as to gather the intention of the legislature in any particular, the whole statute on the subject must be construed together."

See, also, *State ex rel. Purves v. Moyer*, 17 Wash. 643, 50 Pac. 492; *State v. Binnard*, 21 Wash. 349, 58 Pac. 210.

There is another rule of construction, equally familiar, viz., that a special act, or one relating to a particular subject, is not presumed to be repealed by a general act.   Endlich on the Interpretation of Statutes, § 223, thus announces the rule:

"lt is but a particular application of the general presumption against an intention to alter the law beyond the immediate scope of the statute, to say that a general act is to be construed as not repealing a particular one.   .   .   .   It is usually presumed to have only general cases in view, and not particular cases which have been already otherwise provided for by the special act, or what is the same thing, by a local custom.   Having already given its attention to the particular subject, and provided for it, the legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment, unless that intention is manifested in explicit language, or there be something which shows that the attention of the legislature had been turned to that special act, and that the general one was intended to embrace the special cases within the previous one; or something in the nature of the general one making it unlikely that an exception was intended as regards the special act.   The general statute is read as silently excluding from its operation the cases which have been provided for by the special one.   .   .   .   The fact that the general act contains a clause repealing acts inconsistent with it does not diminish the force of this rule of construction."

As supporting this view of construction, the act of 1907, pages 423-4, is both persuasive and instructive.   Section 1 of said act reads:

"The state of Washington hereby assents to the purposes, terms, provisions and conditions of the grant of money provided in an act of Congress approved March 16, 1906, said act being entitled 'An act to provide for an increased annual appropriation for agricultural experiment stations and regulating the expenditure thereof,' and having for its purpose the more complete endowment and maintenance of agricultural experiment stations theretofore or thereafter established under an act of Congress approved March 2, 1887."

In section 2 it is provided that such annual appropriation shall be paid to "the treasurer or other officer duly appointed

by the board of regents of the state agricultural experiment station." This act is of later date than the one under consideration. It is true that this law was passed so as to comply with the act of Congress, but it is also true that, if we should adopt the liberal interpretation of the words "department or institution thereof," invoked by the respondent, this fund would be embraced within the meaning of such law. It is obvious that the legislature did not so intend.

The respondent has directed our attention to art. 6, § 4, of the constitution, but its applicability is not apparent. Keeping in mind the old law as well as the new, the title of the act of 1907, and the subsequent legislation to which reference has been made, we have no difficulty in reaching the conclusion that the act of 1907 was not intended to embrace the fund in controversy.

The writ will therefore issue as prayed for.

RUDKIN, C. J., FULLERTON, CHADWICK, and CROW, JJ., concur.

MOUNT, J. (dissenting)—In my opinion the act in question does not except the state college from its provisions. If that college is an institution of the state, which seems to be decided by the majority, then it is expressly included within the provisions of the act. The regents have so construed the act, because they have complied with its provisions and have deposited more than $7,000 with the state treasurer. No moneys can be drawn from the state treasury except in pursuance of an appropriation. Const., art. 8, § 4. No such appropriation has been made in this case. The decision in this case sets aside both the act in question and also this provision of the constitution. If the state college is not included within the meaning of the act, then upon the same reasoning no state institution is included, and the act is rendered nugatory as to such institutions.

I think the writ should be denied, and therefore dissent.

DUNBAR, J., concurs with MOUNT, J.