[No. 15754.  *En Banc.*  June 22, 1920.]

THE STATE OF WASHINGTON, *on the Relation of James Allen, as Highway Commissioner, Plaintiff,* v. THE PUBLIC SERVICE COMMISSION, *Respondent.*[1]

STATUTES (69)—GENERAL OR SPECIAL ACTS—FERRIES. The ferry law, Rem. Code, §§ 4998 to 5013-1, was a special law on that subject alone and not a general law.

FERRIES—STATUTES (45)—IMPLIED REPEAL—REGULATION OF FERRIES. The ferry law, Rem. Code, §§ 4998 to 5013-1, being a special law covering the whole subject and vesting control of ferries in the county commissioners, was not impliedly repealed by the public service commission law, Id. § 8626-1 et seq., for the regulation of public utilities by the state commission; since the last act does not cover the whole subject matter of the former one, and was not intended to take its place.

Application filed in the supreme court February 4, 1920, for a writ of mandamus to compel the public service commission to exercise jurisdiction over a certain ferry for the purpose of regulating the service and rates thereof. Denied.

*M. F. Gose,* for relator.

*The Attorney General* and *R. M. Burgunder, Assistant,* for respondent.

MOUNT, J.—The relator brings this action in mandamus to compel the public service commission to exercise jurisdiction over a certain ferry for the purpose of regulating the service and the rates of such ferry. The public service commission has refused to exercise jurisdiction over ferries because it is of the opinion that the exclusive jurisdiction over and control of ferries is vested in the county commissioners of the

[1]Reported in 190 Pac. 1012.

various counties of the state under the provisions of §§ 4998 to 5013-1, inclusive, Rem. Code.

The case presents but one question, namely: Did the act of 1911 (Laws of 1911, p. 538; Rem. Code, § 8626-1 et seq.), known as the "Public Service Commission Law," repeal by implication §§ 4998 to 5011, Rem. Code, relating to ferries? These sections will hereafter be referred to as the "ferry law."

The ferry law was originally passed in 1854 (Laws of 1854, p. 353), and, with various amendments, the last of which was made in 1915 (Laws of 1915, p. 59), constitutes §§ 4998 to 5013-1, Rem. Code. These sections make a complete law relating to ferries. This law provides that the board of county commissioners of any county in the state may grant a license to any person entitled to keep a ferry across any lake or stream within its respective county for a term not exceeding five years. It provides for an annual license fee to be paid to the county, the manner in which licenses may be granted, and the duties of the licensee. It also provides that the county commissioners may fix the rates of ferries and penalize the licensee for failure to perform the duties of ferryman. It gives to the county commissioners complete control of ferries within their counties. That control has been exercised since 1854 to the present time. In 1905 (Laws of 1905, p. 145 et seq.), the legislature passed an act establishing a railroad commission and giving that commission certain powers over railroads within the state. This act was amended in 1907 (Laws of 1907, pp. 275, 536 and 691); and in 1909 (Laws of 1909, p. 191) additional powers were given to the railroad commission so as to include express companies and telephone and telegraph lines. In 1911 (Laws of 1911, p. 538), the legislature passed the public service commission law, mak-

ing the former railroad commission the public service commission, giving that commission certain powers over public utilities generally, and expressly repealing the acts above referred to as the railroad commission acts. In none of these acts relating to railroads or other public service corporations is any mention made of the law relating to ferries. The relator argues that the law in relation to ferries, passed in 1854, was a general law because at that time ferries were about the only public utilities which existed in this state. It is true that many of the public utilities we now have did not then exist, but there were other public utilities, such as vessels plying upon the waters of the state, stage coaches upon the highways, and, no doubt, canals. It seems too plain for argument that the law of 1854 relating to ferries was a special law upon the subject of ferries alone. While it is true that the act of 1911, at § 8, defines the term "vessel" to include every species of water craft used in the conveyance of persons for hire, we think that term applies to vessels other than ferries licensed as such; and while the act of 1911 defines the term "public service companies" to include every common carrier, and while it is also true that a ferryman is a common carrier, we are of the opinion that it was not the intention of the legislature, in passing the act of 1911, to repeal, by implication or otherwise, the ferry law; because, in order to effect a repeal of a former act by implication, it must appear "that the subsequent statute covers the whole subject-matter of the former one and was intended to take its place." *State ex rel. Johnson v. Clausen,* 51 Wash. 548, 99 Pac. 743; *Hewitt-Lea Lumber Co. v. Chesley,* 68 Wash. 53, 122 Pac. 993; *White v. North Yakima,* 87 Wash. 191, 151 Pac. 645. At page 554, in the first case cited, we quoted from *Meade v. French,* 4 Wash. 11, 29 Pac. 833, as follows:

" 'Hence the rule obtains that repeals by implication are not favored, and courts will seek to harmonize the laws and preserve them, rather than declare them abrogated or repealed; and if by any reasonable construction they can stand together, they will both· be enforced;   . . .' "

If it had been the intention of the legislature to supersede any part of the law relating to ferries, we think it would have made that intention plain.  At the time the public service commission act was pending in the legislature, three days after its passage, the legislature authorized port districts to acquire and operate ferries (Laws of 1911, p. 418); and in 1915 (Laws of 1915,. p. 59; Rem. Code, § 5013-1), the legislature authorized the county commissioners of certain counties to construct and maintain interstate ferries; thus indicating that the power as defined by the ferry law over ferries was not taken away from the county commissioners.  The public service commission is not given power to license ferries or to say when or where a ferry may be constructed or operated.  There is no word in the public service act of 1911 regarding ferries.  The power to license them is, therefore, without doubt, left to the county commissioners as provided in the ferry law.  It follows, therefore; that the public service commission act does not attempt to cover the whole subject of ferries and does not take its place.  Ferries are local to the counties in which they are situated, and it is reasonable to supose that the legislature determined that the local county authorities could fix and regulate rates and service as well as the public service commission, and for that reason did not repeal, and did not intend to repeal, any part of the ferry law.

The writ is therefore denied.

MITCHELL, FULLERTON, MAIN, TOLMAN, PARKER, BRIDGES, and MACKINTOSH, JJ., concur.

HOLCOMB, C. J. (dissenting)—I dissent. This case presents solely a question of statutory construction, namely: Whether or not the provisions of §§ 4998 to 5013, Rem Code, which are referred to as the "ferry law," have been repealed by chapter 117 of the Laws of 1911, p. 538, known as the "public service commission law."

The contention is made that the ferry law is a special act and, therefore, is not repealed by the public service commission law, a general enactment.

In construing a law to determine whether or not it is special, that is, whether it applies to particular or whether to all persons or things of a class, it becomes necessary to deal in relative terms. No matter how restricted may appear the scope of the persons or things dealt with in a law under one set of circumstances, they perhaps constitute all of the larger class as it actually existed under changed surroundings. To determine whether the subject-matter of the law constitutes all of the class, or only individual or particular persons or things of a class, it is necessary to consider it in the light of the circumstances and conditions existing as of the time of the enactment of the statute in question. This is in conformity with the general trend of decisions by the courts on the subject.

"They [statutes] are to be read in the light of attendant conditions and the state of the law existent at the time of their enactment." *In re Bergeron,* 220 Mass. 472, 107 N. E. 1007.

"All will concede that in construing the Act of 1862 we are to look at the state of things then existing, and in the light then appearing seek for the purposes and objects of Congress in using the language it did." *Platt v. Union Pac. R. R. Co.,* 99 U. S. 48, 25 Law Ed. 424, 428.

"But courts, in construing a statute, may with propriety recur to the history of the times when it was

passed, and this is frequently necessary, in order to ascertain the reason as well as the meaning of the particular provisions in it." *United States v. Union Pac. R. R. Co.*, 91 U. S. 72, 23 Law Ed. 224, 228.

To the same effect see *St. John's Military Academy v. Edwards*, 143 Wis. 551, 128 N. W. 113, 139 Am. St. 1123; *Bloomer v. Todd*, 3 Wash. Terr. 599, 612, 19 Pac. 135. So here, in determining whether the ferry law, passed in 1854, is a special enactment or a general one, we must bear in mind the surrounding circumstances as of the time of its enactment. At that time, it is certain that few of the public utilities now enumerated as the subjects of the public service commission law were in existence in the then territory. In fact, it becomes almost conclusive, as one ponders the thought, that men were not dependent upon public utilities throughout the territorial limits as they are today, with the exception of possibly one—ferries. Moreover, because of the lack of bridges, to the people of the territory ferries were of greater importance than they are at the present time. These are things which we may judicially notice. *McAdam v. Benson Logging & Lumbering Co.*, 57 Wash. 407, 107 Pac. 187; *Wentworth v. McDonald*, 78 Wash. 546, 139 Pac. 503. When the legislature enacted the ferry law it legislated upon almost the whole field of public utilities as then existing. Viewed in this light, I am unable to say that §§ 4998 to 5013, Rem. Code, being the ferry law, related to particular persons or things of a class within the definition of a special act. It therefore stands today as a general enactment, even though, read in the light of present-day conditions, it deals with a subject of very limited scope.

When the legislature, in 1911, enacted chapter 117, being "An act relating to public service properties and utilities, providing for the regulation of the same,

fixing penalties for the violation thereof, making appropriation and repealing certain acts," with a saving clause as to the effect of the act upon municipalities, it legislated upon the entire subject as then existing, as the territorial legislature had in 1854 when it passed the ferry law (Laws of 1854, p. 353). Moreover, by the terms defined and used in the public service commission law, it renders itself repugnant to the ferry law. It defines the term "common carrier," as used in the act, to include "all . . . steamboat companies . . . owning, operating, managing or controlling any such agency for public use in the conveyance of persons or property for hire within this state," and defines "steamboat company," as in the act employed, to include "every corporation, company, association, joint stock association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, owning, controlling, leasing, operating or managing any vessel over and upon the waters of this state." The term "vessel," when used in the act, is defined to include *"every species of water craft, by whatsoever power operated,* for the public use in the conveyance of persons or property for hire over and upon the waters within this state (excepting rowboats and sailing boats under twenty gross tons burden, open steam launches of five tons gross and under, and vessels under five gross tons propelled by gas, fluid, naptha or electric motors)." It is manifest, by the foregoing enactments, that the intention of the legislature, when passing the public utilities act, was to embrace public carriers upon navigable waters of every kind. In modern terms, terms which we can conceive had not been popularly used at the time of enacting the earlier act, it legislated upon the same subject and by implication repealed the former act.

"As a general rule, the enactment . . . of statutes manifestly designed to embrace an entire subject of legislation, operates to repeal former acts dealing with the same subject, although there is no repealing clause to that effect. The application of the rule is not dependent on the inconsistency or repugnancy of the new legislation and the old; for the old legislation will be impliedly repealed by the new even though there is no repugnancy between them." 25 R. C. L. 924, 925.

Chapter 117 of the Laws of 1911 manifestly is designed to embrace the entire subject of public utilities, and the intention of the legislature to repeal the former act is clearly implied.

Respondents suggest that, while three prior acts are expressly repealed in the public service commission law, the ferry law is not, and contend therefrom that it was not the intent of the legislature to repeal the latter act. The acts expressly repealed were of recent date and embraced piecemeal legislation on utilities then more prominently before the public, and I can only conclude that the failure to expressly repeal the act of 1854 was an inadvertence.

Certain sections of the old ferry act are clearly repugnant to the general public utilities law, but they can easily be eliminated and leave the ferries subject to the public utilities law as a harmonious whole.

The peremptory writ should be granted.