[No. 19112.  *En Banc.*  May 22, 1925.]

## THE STATE OF WASHINGTON, *Respondent*, v. VANTAGE BRIDGE COMPANY et al., *Appellants.*[1]

STATES (41)—ACTIONS—INJUNCTION—AUTHORITY TO SUE IN NAME OF STATE. The state may in its own name, through its attorney general, maintain an action to enjoin interference with the state's road program, as defined by the legislature, by the construction and maintenance of a toll bridge as part of a state highway.

BRIDGES (1)—COUNTIES (15)—CONSTRUCTION OF BRIDGE ON STATE HIGHWAY—FRANCHISE—POWERS OF COUNTY BOARD—STATUTES. County commissioners of adjoining counties have no authority to grant a franchise for a toll bridge over a boundary line river, as provided in Rem. Comp. Stat., § 6441 *et seq.*, where it will operate as a connecting link in and be a part of one of the state's primary highways; since it would interfere with the state's road program, and supersede general laws establishing the state highway.

BRIDGES (1)—FRANCHISE—POWERS OF COUNTY BOARD—NAVIGABLE STREAMS—FEDERAL PERMIT TO STATE. In such case, the counties could not grant a franchise for a toll bridge crossing a navigable stream eight hundred feet from the point where the highway meets the river, where the act of Congress permitted construction of a bridge "along the route of and continuous" with the highway in question, in practically the same language as the franchise, and Congress would not grant another franchise for another bridge for such highway.

TOLMAN, C. J., dissents.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered December 5, 1924, in favor of the plaintiff, in an action for an injunction, tried to the court. Affirmed.

*Kelly & MacMahon, Carroll B. Graves, Hartman & Hartman, N. W. Washington,* and *Arthur McGuire,* for appellants.

*The Attorney General* and *Tom W. Holman, Assistant,* for respondent.

[1]Reported in 236 Pac. 280.

MAIN, J.—This action was commenced in the superior court for Thurston county in the name of the state, by the *Attorney General* and the state highway engineer, seeking a decree enjoining the defendants from proceeding with the construction of a toll bridge over the Columbia river in pursuance of a franchise granted by the commissioners of Kittitas and Grant counties. A trial upon the merits resulted in the injunctive relief sought by the state, and from the judgment entered, this appeal is prosecuted.

The Columbia river is a navigable, interstate stream. It forms the boundary between Kittitas and Grant counties. On June 7, 1924, the Congress of the United States gave its consent to those counties, or their assigns, "to construct, maintain and operate a bridge and approaches thereto across the Columbia river at a point suitable to the interests of navigation, at or near Vantage Ferry, Washington, and along the route of and continuous with the North Central Highway as officially designated by the state highway commissioner of the State of Washington . . ." Section 2 of the act of Congress provides that the state "may at any time acquire all right, title, and interest in said bridge and the approaches thereto constructed under the authority of this Act, for the purpose of maintaining and operating such bridge as a free bridge, by the payment to the owners of the reasonable value thereof, not to exceed in any event the construction cost thereof . . ." [U. S. Stat., 1923-24, part 1, p. 660, §§ 1, 2.]

After the consent of Congress had been obtained, the commissioners of the two counties, on August 1 and 2, 1924, acting separately but concurrently, granted to Elbert M. Chandler a franchise "to construct, operate and maintain a toll bridge and approaches thereto and across the Columbia river in the state of Wash-

ington, at or near the present ferry crossing point known as Vantage Ferry, and along the route of and to connect and be continuous with the existing public highway now known and officially designated as the North Central Highway . . ."

The state, through its properly constituted officials, objected to the granting of consent by Congress and the franchise by the counties because it would interfere with the state's highway program, in that the toll bridge, if constructed, would operate as a connecting link in a primary state highway. After the consent had been given and the franchise granted, and negotiations had been conducted with other parties with reference to the construction of the bridge, the state in its own name brought this action for the purpose above stated.

The appellants first contend that the action is not properly brought. They say that it is an action of *quo warranto* and can only be brought on the relation of someone authorized by statute to bring such an action. Little need be said upon this question. In *State v. Camp Lewis Service & Garage Co.*, 129 Wash. 166, 224 Pac. 584, an action was brought by the state in its own name for the purpose of requiring the removal of obstructions from the Pacific Highway, which is a state primary highway. That action was sustained. The general purposes of the two actions are the same. In that case the state sought to require the removal of an obstruction. In the case now before us, the purpose is to prevent unlawful interference with a state highway. The case of *State ex rel. Attorney General v. Seattle Gas & Elec. Co.*, 28 Wash. 488, 68 Pac. 946, 70 Pac. 114, is upon an entirely different state of facts. It was there held that the state, on the relation of the *Attorney General*, did not have authority under the statute to litigate the validity of a franchise granted

for the purpose of laying gas pipes in a city street. Here the action is not brought on the relation of the *Attorney General,* but in the name of the state itself, for the purpose of preventing interference with the state's road program as defined by the legislature. The questions in the cases are different.

The real question in this case is whether the county commissioners of Kittitas and Grant counties have authority to grant a franchise for the construction of a toll bridge which will operate as the connecting link in one of the state's primary highways.

Section 1 of ch. 93 of the Laws of 1919, p. 226, provides:

"Boards of county commissioners are hereby authorized to grant franchises to persons or corporations for the construction, operation and maintenance of toll bridges, outside of incorporated cities and towns, over and across streams within their respective counties, and over and across streams which are boundaries of counties." Rem. Comp. Stat., § 6441.

Section 3, p. 227 [Rem. Comp. Stat., § 6443] of the same act further defines the procedure when the stream to be bridged is the boundary between two counties.

Section 1½ of ch. 110 of the Laws of 1919, p. 268, provides:

"A primary highway is established as follows: A highway starting from a connection with the Sunset Highway at Ellensburg; thence by the most feasible route (heretofore the Sunset Highway) to the Columbia River near Vantage; crossing the same and continuing thence northeasterly by the most feasible route . . ." Rem. Comp. Stat., § 6798.

Prior to the passage of this act the North Central Highway had been designated as is provided in § 15 of ch. 164 of the Laws of 1915, p. 489.

The question more definitely stated is, whether under § 1 of the act of 1919, *supra,* the commissioners are

given the power to grant franchises for the construction and operation of toll bridges upon a primary state highway. The counties are but local subdivisions of the state and are created by the sovereign power of the state without the consent or concurrent action of the people who inhabit them. They are created with a direct and exclusive reference to the general policy of the state and are in fact but a branch of the general administration of that policy. In *State ex rel. Board of Commissioners v. Clausen*, 95 Wash. 214, 163 Pac. 744, it was said:

"Our constitution makes no special reference to county organizations as such other than to recognize them as legal subdivisions of the state, recognizing those counties existing at the time of the adoption of the constitution and providing for the organization of new counties by the legislature under certain restrictions. As local subdivisions of the state, counties are created by the sovereign power of the state of its own sovereign will without any necessary particular solicitation, consent or concurrent action by the people who inhabit them. They are created by the state under its sovereign and paramount authority with a view to the policy of the state at large, for political organization, and the administration of governmental affairs. With scarcely an exception, all the powers and functions of county organizations have a direct and exclusive reference to the general policy of the state . . ."

Since a county derives its authority from the legislature it will not be inferred, in the absence of clearly expressed terms, that the legislature has delegated to it powers which supersede general laws or render them unnecessary. In 7 R. C. L., p. 940, it is said:

"But since a county derives its authority from the legislature it ought not to be inferred, in the absence of clearly expressed terms in the act under which the county is organized, that the legislature has delegated to it the power to legislate concerning its local affairs

in such way as to supersede general laws or render them unnecessary.''

If, under the franchise statute above mentioned, the county commissioners can grant a franchise to construct a toll bridge as a link in a primary state highway, then the effect is to supersede the general laws which give the state control over its primary highways. The right of the counties to grant franchises where it does not interfere with the state program is not here in question. The fact that county roads would be accommodated by the bridge as well as traffic over the state road does not authorize the counties to interfere with the state program.

There has been something said about § 6 of ch. 185, Laws of 1923, p. 629 [Rem. 1923 Sup., § 6791-6], which amends the prior act with reference to the North Central Highway, in that it does not provide that it cross the river. The language of this section is as follows:

"Beginning at Ellensburg; thence by the most feasible route easterly to Vantage Ferry; thence in a northeasterly direction through Ephrata, Odessa and Harrington to a junction with State Road No. 2 at Davenport in Lincoln County."

The legislative purpose, however, was sufficiently plain. A bridge across a stream is in itself a public highway and is usually treated as constituting a part of the highways with which it is connected. In 4 R. C. L., p. 195, it is said:

"A bridge connecting public highways, and erected for the general use and accommodation of the public is itself a public highway, and is usually treated as constituting a part of the highways with which it is connected, whether built and maintained at public expense or by a private corporation authorized to charge and collect tolls from persons using the same. And the public has the same right to the use of bridges as a part of a public highway as it has of the main high-

way itself. In recognition of the fact that bridges constitute a part of the highways, they are ordinarily subject to the control of the same authorities to whom the control of highways is committed . . ."

If further argument be necessary to sustain the position of the state it will be found in ch. 20 of the Laws of 1925, p. 45, § 1, where there is an appropriation of $320,000 made for a "Vantage Ferry bridge." This act, whatever its effect otherwise may be, is a declaration that it is the legislative intent that the state shall construct a free bridge at the point where the appellants are proposing to construct the toll bridge.

It is said, however, that since the proposed toll bridge is to cross the river eight hundred feet to the north of where the highway meets the river, it does not physically interfere with the construction of a bridge by the state upon the line of the highway. It may be true that it does not physically interfere with the construction of such a bridge, but it nevertheless would effectively prevent the state from placing a bridge across the river at this point if the toll bridge were constructed. The Columbia river being a navigable, interstate stream, it cannot be bridged except by consent of the Federal Congress. The permit granted by Congress authorized the construction of a bridge "along the route of and continuous with the North Central Highway as officially designated by the state highway commissioner of the State of Washington." The franchise granted by the counties contains practically the same provisions. The act of Congress further provides, as set out in § 2, *supra*, that the state may become the owner of the bridge upon the conditions there specified. If the toll bridge should be constructed under the franchise granted by the counties, there can be no question that Congress would not grant another franchise for the construction of a bridge

across the same river where the two bridges would be approximately eight hundred feet apart. In fact, in projecting the proposed bridge it must have been assumed that Congress would not grant another permit, because if this bridge should be constructed as a toll bridge and the state should thereafter be permitted by Congress to construct a free bridge, the investment in the toll bridge would be a total loss. The construction of that bridge could only be financed upon the assumption that Congress would not grant another franchise.

The case of *State ex rel. Allen v. Public Service Commission*, 111 Wash. 294, 190 Pac. 1012, is not controlling. It was there held that the special ferry law was not superseded by the subsequent general law providing for the regulation of public utilities by a state commission. The question of the right of a county, which is one of the political subdivisions of the state, to interfere with the general state policy was not there involved. Upon this branch of the case we are of the opinion that the legislature did not intend by the act which authorized the county commissioners to grant franchises that such authority should be exercised in such a way as to become a direct interference with the state policy as to its primary state highways.

Finally, it is contended that the action was improperly brought as against some of the appellants. It may be that all of the parties brought into the action were not necessary, but they were proper parties. The state brought in all persons or corporations who had in any way taken part in the negotiations looking to the construction of the bridge.

The judgment will be affirmed.

MITCHELL, MACKINTOSH, BRIDGES, and ASKREN, JJ., concur.

TOLMAN, C. J. (dissenting)—While I cannot concur in the view of the majority, I agree with those who have not signed this opinion that a formal dissent would at this time serve no useful purpose.