Honorable Andy Miller Prosecuting Attorney Benton County 7320 West Quinault Kennewick, WA 99336-7693
Dear Mr. Miller:
By letter previously acknowledged, you requested our opinion on the following paraphrased questions:
 1. Does Benton County have authority to take over the maintenance of federally owned roads within the Hanford Nuclear Reservation, and pay for the costs of such maintenance with county funds, when the roads are not open to the general public, and may only be traveled by vehicles operated by persons having the special permission of either the United States Department of Energy or its prime contractor?
 2. Does Benton County have authority to set and enforce traffic controls on the above-identified Hanford roads?
 3. Is Benton County obligated to set and enforce traffic controls on the above-identified Hanford roads?
 4. May Benton County contract with the United States Department of Energy to maintain the above-identified Hanford roads, or set and enforce traffic controls for such roads, in return for payment by the United States Department of Energy of Benton County's estimated cost of such services?
 5. If Benton County is authorized to set and enforce traffic controls for the above-identified Hanford roads, may county road funds be used to satisfy the expenses incurred in so doing?
 6. Would the above-identified Hanford roads be considered Benton County roads for purposes of allocating the state motor vehicle fuel tax under RCW 46.68.120, .122, and .124?
 7. If Benton County were to deposit revenues from the county road property tax levy into its current expense fund to satisfy expenses related to setting traffic controls for the above-identified Hanford roads, would the county be precluded from receiving any state funding, in particular under RCW 36.79.140?
 BRIEF ANSWERS
We answer your first, third, and sixth questions in the negative, and your second and fourth questions in the affirmative. We answer your fifth and seventh questions as set forth in the analysis below.
 BACKGROUND
Your questions ask whether Benton County has authority to take over the maintenance of, or to set and enforce traffic controls on, certain roads within the Hanford Nuclear Reservation; and if so, whether various county funds may be expended for these purposes. The answers to these questions depend greatly upon the character of the roads at issue.[1]
The Hanford Nuclear Reservation is owned by the United States Department of Energy. Within this reservation are several hundred miles of roads owned by the federal government. Benton County does not own any easements or rights-of-way as to these roads; moreover, the county historically has not maintained or classified any of the roads within the reservation since relinquishing all ownership interests more than 50 years ago. Benton County receives no motor vehicle tax funds related to these roads. The federal government is exempt from paying any property tax on land within the reservation.
Significantly, the roads themselves are not open to the general public. They may be traveled only by vehicles operated by persons having special permission of either the United States Department of Energy or its prime contractor. Thus, while the roads are owned by a public agency, they are not roads to which the public generally has access. With these facts in mind, we now turn to your specific questions.
 ANALYSIS Question 1
Does Benton County have authority to take over the maintenance of federally owned roads within the Hanford Nuclear Reservation, and pay for the costs of such maintenance with county funds, when the roads are not open to the general public, and may be traveled only by vehicles operated by persons having the special permission of either the United States Department of Energy or its prime contractor?
Counties are local subdivisions of the state created by the state's sovereign power. State v. Vantage Bridge Co., 134 Wn. 568,572, 236 P. 280 (1925). As such, county commissioners and other county officials have only those powers that have been granted, either expressly or by reasonable or necessary implication, by the state constitution or statutes. State ex rel.Taylor v. Superior Court for King Cy., 2 Wn.2d 575, 579,98 P.2d 985 (1940).[2] This is especially the rule where the public treasury will be directly affected. State ex rel. Bain v. Clallam Cy. Bd.of Cy. Comm'rs, 77 Wn.2d 542, 548, 463 P.2d 617 (1970).
The Legislature has enacted a comprehensive statutory scheme detailing the powers and duties of counties with respect to the construction and maintenance of "highways" and "county roads". RCW36.32.120 provides in part:
The legislative authorities of the several counties shall:
. . .
 (2) Lay out, discontinue, or alter county roads and highways
within their respective counties, and do all other necessary acts relating thereto according to law, except within cities and towns which have jurisdiction over the roads within their limits[.]
(Emphasis added.) RCW 36.75.020 provides:
 All of the county roads in each of the several counties shall be established, laid out, constructed, altered, repaired, improved, and maintained by the legislative authority of the respective counties as agents of the state, or by private individuals or corporations who are allowed to perform such work under an agreement with the county legislative authority.
(Emphasis added.) RCW 36.75.030-.035 authorize counties to enter into reciprocal agreements with the state, under which the county assists in improving or maintaining state highways, and the state does likewise with respect to county roads.
RCW 36.75.040 sets forth additional powers and duties of county commissioners. It provides in part:
 The board of county commissioners of each county, in relation to roads and bridges, shall have the power and it shall be its duty to:
 (1) Acquire in the manner provided by law property real and personal and acquire or erect structures necessary for the administration of the county roads of such county;
 (2) Maintain a county engineering office and keep record of all proceedings and orders pertaining to the county roads of such county;
 (3) Acquire land for county road purposes by purchase, gift, or condemnation . . .;
 (4) Perform all acts necessary and proper for the administration of the county roads of such county as by law provided[.]
(Emphasis added.)
RCW 36.80.010 requires the board of county commissioners to employ a full time county road engineer. Pursuant to RCW 36.80.030, the engineer's duties include examin[ing] and certify[ing] to the board all estimates and all bills for labor, materials, provisions, and supplies with respect to county roads "; prepar[ing] standards of construction of roads and bridges; and supervising, under the board's direction, the "establishing, laying out, constructing, altering, improving, repairing, [and] maintaining [of] all county roads.
(Emphasis added.)
Finally, RCW 36.82.010 establishes a county road fund for each county. RCW 36.82.070 then sets forth various "county road purposes" for which the monies in the fund may be used. Although the county may divert some of the monies in this fund for other general county purposes (see RCW 36.33.220; RCW 36.82.040), the primary purpose of the fund, as the title suggests, is to support the county roads.
The legislative authorization to counties with respect to the maintenance of roads refers consistently and specifically to "highways" and "county roads". RCW 36.75.010(11) defines "highway" as:
 [E]very way, lane, road, street, boulevard, and every way or place in the state of Washington open as a matter of right to public vehicular travel both inside and outside the limits of incorporated cities and towns.
(Emphasis added.) RCW 36.75.010(6) defines "county road" as:
 [E]very highway or part thereof, outside the limits of incorporated cities and towns and which has not been designated as a state highway[.]
In State ex rel. Oregon-Washington R.R. Navigation Co. v. WallaWalla Cy., 5 Wn.2d 95, 104 P.2d 764 (1940), the state Supreme Court was asked to interpret a virtually identical statutory definition of "highway". The court first noted that, "It is, of course, true that the county may not, at public expense, construct what is no more than a private road." Id. at 99. In determining whether the road at issue there was a highway, in contrast to a private road, the court then stated:
 A highway is a way open to the public at large, for travel or transportation, without distinction, discrimination, or restriction, except such as is incident to regulations calculated to secure to the general public the largest practical benefit therefrom and enjoyment thereof. Its prime essentials are the right of common enjoyment on the one hand and the duty of public maintenance on the other. It is the right of travel by all the world, and not the exercise of the right, which constitutes a way a public highway, and the actual amount of travel upon it is not material. If it is open to all who desire to use it, it is a public highway although it may accommodate only a limited portion of the public or even a single family or although it accommodates some individuals more than others.
Id. at 100 (citations omitted).
Turning now to the nature of the roads presented in your question, it appears clear that they do not meet the statutory definition of "county road" or "highway". The federally-owned roads within the Hanford Reservation are not open, as a matter of right, to public vehicular travel. Only those persons having the special permission of either the federal government or its prime contractor, and operating authorized vehicles, may travel upon these roads. The fact that the roads are owned by a public entity is not sufficient to make them public "highways".[3]
The Legislature has plainly indicated its intent to grant counties the power to construct and maintain only "county roads" or "highways", where such maintenance will be paid for by county funds. We therefore conclude that Benton County does not have the authority to maintain the federally-owned Hanford Reservation roads at county expense, and answer your first question in the negative.
 Question 2
Does Benton County have authority to set and enforce traffic controls on the above-identified Hanford roads?
Your second question requires a different analysis because it involves the county's police power. Article 11, section 11 of the state constitution provides that: "Any county . . . may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."
Vehicular traffic regulations are within the local governing authorities' constitutional police power. Seattle v. Wright,72 Wn.2d 556, 559, 433 P.2d 906 (1967). Thus, an independent statutory grant of authority is not necessary to enact such regulations, so long as they do not contravene this constitutional provision.
The state Supreme Court has interpreted article 11, section 11 as invalidating a local police power regulation only when either: (1) the Legislature, expressly or by necessary implication, states its intention to preempt the field in question, leaving no room for concurrent jurisdiction; or (2) the local regulation "directly and irreconcilably" conflicts with a state statute, either by permitting that which the statute forbids or vice versa. Tacoma v.Luvene, 118 Wn.2d 826, 833-35, 827 P.2d 1374 (1992). Furthermore, an exercise of the local police power is presumed valid, Wright,72 Wn.2d at 559, and a statute will not be construed as taking away the power of a county to legislate unless this intent is clearly and expressly stated. State v. Everett Dist. Justice Ct.,92 Wn.2d 106, 108, 594 P.2d 448 (1979).
The state laws governing vehicles and public highways are set forth primarily in Titles 46 and 47 RCW. The provisions of these two titles, together with other laws pertaining to highways and roads, are to be construed "in pari materia", or as a unified whole. RCW 46.98.020. RCW 46.08.020 further provides:
 The provisions of this title relating to vehicles shall be applicable and uniform throughout this state and in all incorporated cities and towns and all political subdivisions therein and no local authority shall enact or enforce any law, ordinance, rule or regulation in conflict with the provisions of this title except and unless expressly authorized by law to do so and any laws, ordinances, rules or regulations in conflict with the provisions of this title are hereby declared to be invalid and of no effect. Local authorities, may, however, adopt additional vehicle and traffic regulations which are not in conflict with the provisions of this title.
(Emphasis added.)
Turning to the specific statutes, chapter 46.61 RCW sets forth the rules of the road for the operation of motor vehicles, while chapter 47.36 RCW sets forth the responsibilities of local authorities regarding traffic control devices. With certain exceptions not relevant here, these laws apply "exclusively to the operation of vehicles upon highways". RCW 46.61.005. A "highway" is defined as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." RCW 46.04.431. A "county road" is defined as "every public highway . . . outside the limits of cities and towns and which has not been designated as a state highway." RCW 46.04.150.[4]
RCW 46.61.200 grants "the proper authorities" the power to determine the proper posting and placement of stop signs on public highways not designated as state highways. RCW 46.61.415 grants local authorities the power to increase or decrease the maximum speed limits on public highways within their jurisdiction, and to conduct engineering and traffic investigations necessary to determining such speed limits. RCW 47.36.060 requires local authorities to place and maintain traffic control devices as necessary upon public highways under their jurisdiction.
Taken together, the state traffic statutes grant counties extensive express authority, and in some cases impose certain duties, regarding the regulation of "highways" under their jurisdiction. The roads within the Hanford reservation, however, as noted previously in our answer to Question 1, do not meet the statutory definition of "highway" or "county road" because they are not open to the use of the general public. The Legislature has been silent regarding the counties' authority as to these particular types of roads. The question, then, is whether the standards enunciated in Tacoma v. Luvene, supra, permit the counties to set and enforce traffic controls on these roads pursuant to the police power.
We conclude that they do. First, we find no legislative preemption of the field. The Legislature, while providing that the application of title 46 RCW shall be uniform throughout the state, has expressly permitted local vehicle and traffic regulations that are not in conflict with that title. Second, we do not believe that setting and enforcing traffic controls on the Hanford roads would conflict with state statutes. It is true that the statutes governing traffic regulations are sweeping in scope, and that they refer consistently to "highways" and "county roads" in their grants of local authority. Nevertheless, implementation of the traffic controls in question here would not create a "direct and irreconcilable conflict" with the statutes; nor would it permit that which the statutes forbid, or vice versa. Tacoma v. Luvene,118 Wn.2d at 834-35. See Seattle v. Wright, 72 Wn.2d 556, 559-60,433 P.2d 906 (1967). (The fact that a state statute, defining highways for the purpose of regulating motor vehicles, fails to include private roadways not publicly maintained, does not prohibit municipal ordinances regulating the vehicular use of such a roadway). We find no violation of article 11, section 11, and therefore answer your second question in the affirmative.
 Question 3
Is Benton County obligated to set and enforce traffic controls on the above-identified Hanford roads?
As noted above, the state statutes authorize, and in some instances direct, the counties to set and enforce traffic controls on "highways" and "county roads". We have located no statutes directing counties to take any such actions on federally owned-roads not open to the general public, such as those on the Hanford reservation. Furthermore, while article 11, section 11 of the state constitution grants counties additional police powers beyond those set forth in statutes, it does not impose the obligation to exercise such powers. We therefore answer your third question in the negative.
 Question 4
May Benton County contract with the United States Department of Energy to maintain the above-identified Hanford roads, or set and enforce traffic controls for such roads, in return for payment by the United States Department of Energy of Benton County's estimated costs of such services?
Chapter 39.34 RCW is known as the Interlocal Cooperation Act. The Legislature has declared the policy of this Act in RCW 39.34.010:
 It is the purpose of this chapter to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities.
The Act specifically allows cooperation among "public agencies", which is defined to include "political subdivisions" of the state (which in turn includes counties, Mochizuki v. King Cy., 15 Wn. App. 296,298, 548 P.2d 578 (1976)), as well as "any agency of the United States". RCW 39.34.020. In particular, RCW 39.34.080
provides in part:
 Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which each public agency entering into the contract is authorized by law to perform[.]
In our response to Question 1, we indicated that the county generally has extensive road maintenance authority. See RCW36.32.120; 36.75.020-.040; 36.80.010; 36.80.080. However, we concluded that this authority was limited to the maintenance of statutorily defined "county roads" and "highways", when such maintenance would be paid for with county funds.
Your question here is different, for it does not entail the expenditure of any county funds. Rather, the United States Department of Energy would entirely reimburse Benton County for the maintenance costs incurred.
We believe the Interlocal Cooperation Act, and in particular RCW39.34.080, was designed to accommodate this type of situation. The county, pursuant to a contract with another governmental agency, will perform a governmental service (i.e., road maintenance) which it is authorized by law to perform, and will be fully reimbursed for its services. If we were to read the Act as allowing the county to contract only for the maintenance of "county roads" and "highways", the Act would be stripped of nearly all its utility — indeed, it is hardly necessary for the county to contract with another entity in order for the county to construct and maintain its own county roads. Statutes should be read in a manner that will avoid strained results. State v. Stannard,109 Wn.2d 29, 36, 742 P.2d 1244 (1987).[5]
We likewise conclude that the county may contract with the United States Department of Energy to set and enforce traffic controls on the Hanford roads, in return for reimbursement by the United States Department of Energy of the county's estimated costs of such services. The recover able costs would include those reasonably incurred in connection with performance of the county's police power obligations.[6]
 Question 5
If Benton County is authorized to set and enforce traffic controls for the above-identified Hanford roads, may county road funds be used to satisfy the expenses incurred in so doing?
RCW 36.82.010 establishes a "county road fund" in each county, comprising "[a]ny funds which accrue to any county for use upon county roads[.]" Primarily, this consists of funds received pursuant to a general property tax levy, see RCW 36.82.040, and the county's share of the state motor vehicle fuel tax and special fuel tax levies, which are credited to the state motor vehicle fund and then to the county road fund. See RCW 82.36.410;82.38.290; 46.68.070; 36.82.050.
In AGO 65-66 No. 121, we stated that "no part of a county road fund, from whatever source derived, may be used or expended for other than county road, bridge, or highway purposes." AGO 65-66 No. 121 at 2 (1966) quoting AGO 61-62 No. 139 at 4 (1962). This remains true for all funds which are deposited into the county road fund. However, in 1971, the Legislature amended RCW 36.82.040
to provide that a portion of the so-called "county road property tax revenues" may now be placed in the county current expense fund and used for other purposes.[7] RCW 36.82.040 states in relevant part:
 For the purpose of raising revenue for establishing, laying out, constructing, altering, repairing, improving, and maintaining county roads, bridges, and wharves necessary for vehicle ferriage and for other proper county purposes, the board [of county commissioners] shall annually at the time of making the levy for general purposes make a uniform tax levy throughout the county, or any road district thereof, of not to exceed two dollars and twenty-five cents per thousand dollars of assessed value of the last assessed valuation of the taxable property in the county, or road district thereof. . . . All funds accruing from such levy shall be credited to and deposited in the county road fund except that revenue diverted under RCW 36.33.220 shall be placed in a separate and identifiable account within the county current expense fund.
(Emphasis added.) RCW 36.33.220 further states in relevant part:
The legislative authority of any county may budget . . . and expend any portion of the county road property tax revenues forany service to be provided in the unincorporated area of thecounty notwithstanding any other provision of law, including chapter 36.82 RCW and RCW 84.52.050 and RCW 84.52.043.
(Emphasis added.) Although the county road property tax revenues may now be spent for any "proper county purposes", the county's share of the state motor vehicle fund and all other contributions to the county road fund may still be spent only for "county road purposes".
In answer to Question 2, we noted that the Hanford roads are not "county roads" as defined by statute. We further concluded, however, that Benton County may set and enforce traffic controls on these roads pursuant to its police power under article 11, section 11 of the state constitution.
Applying the above statutes to these findings, we conclude that the county may expend county road property tax revenues, if diverted to the county current expense fund, to cover the costs of setting and enforcing traffic controls on the Hanford roads as a "proper county purpose". We conclude that the county may not expend any other portion of the county road fund, including that derived from the state motor vehicle fund, to cover such costs, however, since this would not be in fulfillment of a "county road purpose" as required by statute.
 Question 6
Would the above-identified Hanford roads be considered Benton County roads for purposes of allocating the state motor vehicle fuel tax under RCW 46.68.120, .122, and .124?
As noted in our answer to Question 2, the Hanford roads do not meet the definition of "county road" set forth in RCW 46.04.150, because they do not qualify as "public highways". This definition applies to all of Title 46 RCW "except where otherwise defined, and unless where used the context thereof shall clearly indicate to the contrary". RCW 46.04.010.
The allocation formulas set forth in RCW 46.68.120-.124 refer in part to "county roads". No alternative definition is provided for this term, nor does the context of these statutes indicate that any other should be used. We therefore conclude that the Hanford roads are not county roads for pur poses of allocating the state motor vehicle fuel tax.
 Question 7
If Benton County were to deposit revenues from the county road property tax levy into its current expense fund to satisfy expenses related to setting traffic controls for the above-identified Hanford roads, would the county be precluded from receiving any state funding, in particular under RCW 36.79.140?
As noted in our answer to Question 5, the county is authorized under RCW 36.82.040 to place any portion of its county road property tax levy in a separate and identifiable account within the county current expense fund, and is authorized under RCW36.33.220 to then expend such monies for any service to be provided in the unincorporated area of the county. This authorization would include satisfying expenses related to setting traffic controls for the Hanford roads, even though they are not "county roads".
RCW 36.79.140 provides additional funds to counties from the rural arterial trust account. This statute states in part:
 Only those counties that during the preceding twelve months have spent all revenues collected for road purposes only for such purposes, including traffic law enforcement, as are allowed to the state by Article II, section 40 of the state Constitution are eligible to receive funds from the rural arterial trust account[.]
In our opinion, this statute would not preclude the county from receiving rural arterial trust account monies if the county were to spend county road property tax revenues on services related to the Hanford roads. Although those roads may not be "county roads", the expenditure in question would still clearly be for "road purposes". RCW 36.79.140 does not state that the roads must be county roads, and we will decline to add language to the statute that is not there. Applied Indus. Materials Corp. v. Melton,74 Wn. App. 73, 79, 872 P.2d 87 (1994) (language should not be added or subtracted from a statute unless imperatively required to make it a rational statute).
Our research has not located any other statutes under which diverting county road property tax revenues pursuant to RCW36.33.220 would result in a reduction or elimination of additional state funding.
We trust that you will find the foregoing to be of assistance.
Sincerely,
CHRISTINE O. GREGOIRE Attorney General
GREGORY J. TRAUTMAN Assistant Attorney General
[1] Your opinion request sets forth several pertinent facts regarding the Hanford Reservation and the roads therein. We have relied extensively on these facts, as presented, in answering the questions presented in your opinion request.
[2] Home rule charter counties created pursuant to article 11, section 4 of the state constitution have broader powers; their actions are valid as long as they do not contravene any state statutes or constitutional provisions. King Cy. Council v. PublicDisclosure Comm'n, 93 Wn.2d 559, 562-63, 611 P.2d 1227 (1980). Benton County, however, is not a home rule charter county. We do not address your question in the context of such counties.
[3] Although not privately owned, the federally-owned Hanford roads are much more akin to "private road[s]", which are defined in RCW36.75.010(10) as: [E]very way or place in private ownership andused for travel of vehicles by the owner or those having expressor implied permission from the owner, but not by other persons.
(Emphasis added.)
The county has no statutory authority to maintain "private roads", and State ex rel. Oregon-Washington R.R. Navigation Co. v. WallaWalla Cy., 5 Wn.2d 95, 104 P.2d 764 (1940), clearly dictates that these types of roads may not be constructed (and by extension, maintained) at public expense.
[4] RCW 47.04.010 (9) and (26) contain virtually identical statutory definitions. Note also that these definitions closely parallel those set forth in RCW 36.75.010 (6) and (11), supra.
[5] We are aware of a prior Attorney General Opinion, AGO 1969 No. 8, in which we concluded that the state department of institutions did not have authority under RCW 39.34.080 to enter into a contract with a county for the temporary detention of county jail prisoners in state correctional institutions. That opinion, however, is distinguishable from the present one. There, we noted that these various institutions have not been established for the generalized purpose of providing housing or shelter for all persons convicted of crimes or who may be otherwise in legal custody; rather, they each have been established as places of confinement for specified classes of crimes.
AGO 1969 No. 8 at 2.
The state thus could not rely upon RCW 39.34.080 to contract for the placement of county jail prisoners in state correctional institutions, inasmuch as the statutes specifically forbade this practice.
That circumstance is not present here. The county will not, by contracting for the mainte nance of the Hanford roads and receiving reimbursement in return, engage in a practice forbidden by statute. Moreover, the services which it will be performing for the Department of Energy (i.e., road maintenance) are services which it has the independent statutory authority to perform.
[6] As suggested in your opinion request, these costs might include labor, equipment, and material costs incurred with respect to the necessary engineering and traffic investigations, as well as the costs associated with the advertising of the public hearings necessary for the establishment of the traffic controls.
[7] Your opinion request refers to the "county road property tax levy under RCW 36.82.040," a term that is somewhat of a misnomer, given the broader purposes for which this levy may be used.